ARTHUR J. ROCQUE, JR., COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.* JOSEPH J. FARRICIELLI ET AL.
(SC 17022)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued February 11—officially released June 1, 2004

*Maureen O'Doherty*, with whom, on the brief, were *Elizabeth C. Barton, Elin Swanson Katz* and *Clifford E. Nichols III*, for the appellants (named defendant et al.).

*Mark P. Kindall*, assistant attorney general, with whom were *Elizabeth P. Gilson*, and, on the brief, *Richard Blumenthal*, attorney general, and *Kimberly P. Massicotte* and *Matthew I. Levine*, assistant attorneys general, for the appellees (plaintiff and intervening plaintiffs).

*Opinion*

BORDEN, J. The plaintiff, the commissioner of environmental protection (commissioner), and the intervening plaintiffs, the town of Hamden (town) and its zoning enforcement officer, brought this action to enforce the terms of a consent order, a cease and desist order and a stipulated judgment, and to assess civil penalties for the violation of various environmental statutes and zoning ordinances against the named defendant, Joseph J. Farricielli.[1] The defendant appeals[2] from the judgment of the trial court finding him in violation of his obligations under the consent order with the commissioner, and the cease and desist order and the stipulated judgment with the town, and requiring the defendant to

---

[1] We refer herein to the commissioner, the town and its zoning enforcement officer collectively as the plaintiffs.

In addition to Farricielli, several corporations controlled by him were also named as defendants. These corporations were all defaulted for failure to appear before the trial court. All of the corporate defendants are now defunct and are not involved in this appeal. For ease of reference, we refer herein to Farricielli as the defendant.

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

comply with all terms of the consent order, the cease and desist order, and the stipulated judgment, as well as the various state and local laws that they enforce. The defendant challenges the trial court's order requiring him to pay civil penalties totaling more than $3.7 million, pursuant to General Statutes §§ 22a-226a and 22a-438 (a), for the operation of unpermitted solid waste disposal areas. The defendant claims that: (1) the trial court's judgment ordering him to comply with the consent order and the stipulated judgment violated his constitutionally protected due process rights; (2) the trial court abused its discretion in determining the amount owed in penalties; and (3) the trial court failed to perform its fact-finding role. We affirm the judgment of the trial court.

In this action, which was commenced on July 9, 1999, the commissioner filed a complaint, which subsequently was amended four times, against the defendant and his corporations alleging flagrant and persistent violations of General Statutes §§ 22a-44 (b), 22a-108, 22a-208a, 22a-208b, 22a-208c and 22a-430, concerning the operation of their unpermitted solid waste disposal areas. Specifically, the commissioner sought: an order from the trial court enforcing the terms of the commissioner's 1998 consent order with the defendant and his corporations, which was designed to end ongoing statutory violations; a temporary and permanent injunction requiring the defendant and his corporations to cease their illegal activities; and an order requiring the defendant and his corporations to pay civil penalties for each day of each alleged violation. The town and its zoning enforcement officer subsequently intervened as party plaintiffs in the action, and the plaintiffs filed a joint amended complaint seeking, in addition to all of the aforementioned remedies, enforcement of an existing cease and desist order and the stipulated judgment in effect between the town and the defendant and

his corporations, which was designed to end ongoing violations of various zoning ordinances. A bench trial took place in September and October, 2000, and the trial court issued its memorandum of decision on September 21, 2001, ordering all of the forms of relief sought by the plaintiffs. This appeal followed.

The trial court found the following facts. The defendant and his corporations own four contiguous parcels of property, three of which are located in the town of Hamden and one in the town of North Haven. The parcels are bordered by the Quinnipiac River on the east and by State Street on the west. Tidal marshes abut the properties to the north and south, and two of the parcels contain ponds. One of the ponds, which is known as the "tire pond" because the defendant and his corporations used it for the unauthorized disposal of approximately 15 million used tires, is separated from the Quinnipiac River and adjoining marshlands by a narrow dike. Since the 1970s, the defendant and his corporations maintained various solid waste disposal operations on these properties, and, on occasion, leased the parcels to other businesses for similar uses. The defendant's corporations and his various tenants used the land for, among other things, the sorting, recycling, reduction and disposal of construction and demolition waste, pumice, used tires and other refuse. One tenant operated a landfill on one of the parcels, and the defendant and his corporations maintained offices and scales on another of the parcels.

Beginning as early as 1974, the plaintiffs in this case became concerned over the unauthorized and otherwise illegal activities of the defendant, his corporations and his tenants.[3] Several attempts were made to bring

---

[3] The commissioner and the town testified at trial that they had filed, separately and in concert, a seemingly endless litany of enforcement actions against the defendant, his corporations and his tenants. In 1974, the commissioner issued an administrative order to the defendant and his corporations requiring them to correct conditions at one of the landfills on the property.

the defendant, his corporations and tenants into compliance with state statutes and town ordinances, which, among other things, required the defendant and his corporations to secure the appropriate permits and to abide by their requirements. In December, 1995, the town obtained a temporary injunction against the defen-

In 1981, the commissioner obtained a cease and desist order requiring the defendant and his corporations to end all unpermitted solid waste operations and suspended the defendant's overall site permit for the southernmost parcel. In 1984, that site permit was revoked entirely. In 1992, the commissioner obtained a stipulated judgment regarding conditions at the tire pond, and in 1995 and 1996, the commissioner pursued an administrative action against the defendant and his corporations seeking to end all unauthorized dumping of used tires in the tire pond and the implementation of a plan for the pond's eventual closure to prevent its contents from contaminating the adjacent river and marshland. It was upon this action that the 1998 consent order involved in the present case was based. In 1996, the commissioner ordered one of the defendant's tenants to cease its landfill operations due to various environmental infractions. In February, 1998, in addition to the consent order relating to the tire pond, the commissioner and the defendant entered into a second consent order regarding additional unauthorized activities. The defendant's compliance with that order, however, is not at issue in the present case.

In December, 1995, the town obtained a temporary injunction against the defendant and his corporations, which eventually evolved into the stipulated judgment at issue in the present case. In March, 1999, the town obtained a cease and desist order against the defendant and his corporations in relation to their unauthorized processing and storage of pumice and fragmented metals, and the storage of trucks and truck parts on the defendant's Hamden properties. The defendant's subsequent failure to comply with this order, in addition to his failure to comply with the terms of the stipulated judgment, was the basis of the town's complaint in the present case.

On December 3, 1999, nearly six months after the first complaint was filed in the present case, the commissioner moved the trial court for an immediate temporary injunction to prevent the defendant and his corporations from engaging in any unauthorized activities in relation to the tire pond, pending adjudication of the merits of the commissioner's claim. The motion went unopposed, and the trial court granted it on January 3, 2000. Less than one month later, however, the commissioner filed a motion for contempt, claiming that the defendant and his corporations failed to comply with the temporary injunction. The motion was still pending at the time the case went to a hearing, and the trial court granted it along with all other forms of relief sought by the plaintiffs, including the imposition of a permanent injunction in lieu of the existing temporary injunction.

dant and his corporations, and it was on this order that the stipulated judgment involved in this case was based. In March, 1999, the town obtained a cease and desist order, which it also requested the court to enforce in the present case.

In February, 1998, the commissioner issued a consent order designed to go into effect on May 28, 1998, which was signed by the defendant on behalf of himself individually and on behalf of his corporations. Simply stated, the consent order required the defendant and his corporations to cease the operation of all unpermitted solid waste facilities and to remediate the tire pond. Their subsequent failure to comply adequately, or, in some cases, at all, with the terms of the consent order, along with the violation of the stipulated judgment and the cease and desist order obtained by the town, constitute the basis of the present case. Additional facts will be set forth as needed in our discussion of the defendant's claims.

Following a lengthy court trial and the filing of post-hearing briefs, the trial court found for the plaintiffs on all counts and ordered the defendant to comply with the terms of the consent order, the stipulated judgment, and the cease and desist order, and to pay civil penalties for his ongoing violations of state and local laws. The defendant subsequently filed motions for reargument and for a stay of the injunctions ordered by the court pending an appeal, both of which were denied. On appeal to this court, the defendant claims that: (1) the trial court violated his right to due process by ordering him to comply with the terms of the consent order and the stipulated judgment because the consent order and stipulated judgment were in conflict with one another, and because the trial court's judgment was in conflict with an order issued by a criminal court in relation to parallel criminal proceedings; (2) several statutes and regulations that the trial court found the defendant to

have violated are unconstitutionally vague and arbitrarily enforced, and that, therefore, the court's order that the defendant pay penalties for their violation deprived the defendant of his due process rights; (3) the trial court failed to consider and make findings in calculating the amount of penalties for which the defendant was liable; and (4) the trial court's factual findings were not supported by the evidence and, therefore, do not provide an adequate basis for the court's conclusions of law. We disagree with all of the defendant's claims and proceed by addressing each in turn.

I

The defendant first claims that the trial court's order requiring him to comply with the terms of the consent order with the commissioner and the stipulated judgment with the town is improper because the consent order and stipulated judgment contain conflicting obligations and prohibitions, thereby rendering the trial court's judgment internally inconsistent, and that, moreover, the trial court's judgment is in conflict with the criminal court's ordered terms of release in a parallel criminal proceeding. Such conflicting orders, the defendant claims, violated his due process rights under the fourteenth amendment. We disagree.

The following additional facts are necessary for our resolution of these claims. The defendant became subject to the requirements of the stipulated judgment with the town in December, 1995, and, subsequently, he became subject to the requirements of the consent order with the commissioner in May, 1998. The present case arises from his failure to adhere to the terms of either the judgment or the consent order. The plaintiffs' final amended complaint was filed on March 22, 2000, and the trial in the present case began on September 26, 2000.

The defendant was arrested on October 26, 1999, and subsequently charged with fourteen counts of criminal conduct related to the properties and activities at issue in the present case. The defendant was released on bond, but was later found by the criminal court to have violated the terms of his release. As a result, the criminal court issued an order on June 27, 2000, modifying the terms of the defendant's release. Specifically, the criminal court ordered the defendant to "cease *all* activities at the site of 'the tire pond,' including: receiving, disposing, processing or transporting *any* materials in connection with the property, pending the outcome of the charges in this case."[4] (Emphasis in original.)

The trial court, on September 21, 2001, issued its decision in the present case. Before listing the specific orders, the trial court stated that it "issue[d] the following injunction, the aim of which is to permit remediation at the site to be done by parties unrelated to the [defendant] because of the defendant['s] proven inability to

---

[4] In a memorandum accompanying its order, the criminal court addressed the defendant's argument that he had not violated the existing terms of release because he was acting in compliance with his consent order with the commissioner. The defendant maintained that he had been placed in a " 'Catch 22' " when he had been subjected to the criminal court's terms of release and, as a result, could be arrested and prosecuted for activities that were required of him by the consent order. The criminal court stated that it was "mindful of the issues raised by the defense during the hearing, including . . . the dilemma of attempting to comply with the [c]onsent [o]rder issued by the [c]ommissioner . . . ." The criminal court, however, further stated that the "defendant's long history of problems with the [department of environmental protection (department)] including environmental violations and criminal convictions suggest to this court that this defendant has brought these problems upon himself by failing to seek and obtain [department] approval for his activities, and that further effort on the part of the [department] to establish a dialogue with the defendant would have been fruitless." The trial court, moreover, subsequently found that the defendant had *not* been acting in compliance with the consent order at any point between May 28, 1998, the date on which the consent order went into effect, and September 26, 2000, the date on which the hearing before the trial court commenced, including the time period during which he was found to be in violation of his initial terms of release.

comply with the provisions of the [c]onsent [o]rder." The trial court then ordered the defendant to do the following: (1) retain consultants, acceptable to the commissioner, for the purposes of completing the affirmative obligations of the consent order regarding the closure of the tire pond, stabilization of the dike, and remediation of the surrounding wetlands; (2) submit all plans for carrying out these obligations for the commissioner's approval; (3) prevent any agents, employees or tenants from interfering with the work of consultants or employees and agents of the commissioner; (4) post a bond in the amount of $1 million to ensure completion of the consent order's provisions; (5) post a bond in the amount of $45,000 for the cost of a third party to stabilize the dike; (6) pay all costs incurred by the commissioner, his employees or agents in performing the obligations of the consent order; (7) grant the commissioner an environmental land use restriction; (8) notify the commissioner in no more than fifteen days of any transfer of ownership of the properties at issue; (9) abstain from any further violations of state environmental laws and regulations; (10) obtain all necessary permits for any future uses of the properties in question; (11) abstain from placing any material in the tire pond without first giving notice to the commissioner and obtaining written approval; and (12) perform any testing of materials or groundwater as required by the commissioner.

The defendant claims in this appeal that the orders contained in the trial court's judgment conflict with the criminal court's terms of release, which ordered him to cease all activities at the site of the tire pond. Thus, the conflict that the defendant claims is between his obligations under the criminal court's order of June 27, 2000, to cease all activities at the tire pond, and the civil court's judgment of September 21, 2001.[5]

---

[5] It is clear from his brief that this is the only conflict of which the defendant complained on appeal. When presented at oral argument before

Specifically, the defendant claims that the criminal court's order prevents him from doing the following, as required of him by the trial court's judgment: (1) retaining a consultant to close the tire pond, stabilize the dike and remediate the wetlands; (2) performing any testing of materials to be placed in the tire pond; (3) taking all necessary steps to prevent agents, employees, tenants or other parties from interfering with the work of the commissioner's employees and agents; (4) removing and disposing of all solid waste brought to the tire pond without a permit; (5) initiating closure and capping of the tire pond; and (6) ending all unpermitted discharge into the wetlands or the Quinnipiac River. We conclude, however, that the defendant's claim that the trial court's judgment conflicts with the criminal court's order is moot.

The following facts are necessary to our determination that the defendant's claim is moot. On February 6, 2004, the defendant filed a motion with this court, which we granted, requesting that we take judicial notice of the written plea agreement, in the criminal court, between the defendant and the state, entered into on October 31, 2003. The plea agreement stated that the defendant voluntarily pleaded guilty to two of the counts against him, and furthermore that he agreed, prior to January 5, 2004, the proposed date of sentencing, to remove from his properties and properly dispose of certain piles of scrap metals, scrap vehicles and demolition and construction materials. The defendant was further required by the plea agreement to submit proper documentation of these activities to the criminal court. In addition, the plea agreement stated that the

---

this court, however, with the fact that, as we explain later in the text of this opinion, the June 27, 2000 order had been displaced by his subsequent plea agreement and by the clarifications made at the time that he had entered his plea, which removed any semblance of conflict, the defendant made an oral claim of a *different* conflict. We decline to consider this last minute shift in his claim on appeal.

defendant and the state had agreed to the following specific conditions of probation: (1) the defendant shall not engage in any conduct that is in violation of any environmental statute or regulation anywhere in the state of Connecticut; (2) the defendant shall not engage in any activity on any of the properties at issue except that he may perform certain activities as required by certain specified portions of the civil trial court's judgment, but only so long as such activities are carried out in accordance with the provisions of the trial court's judgment and have received the prior written approval of the commissioner; (3) the defendant may place final cover material on the landfill, but only so long as such material has been preapproved in writing by the commissioner and placement is done in accordance with a plan and schedule that has been approved in writing by the commissioner as required by the trial court's judgment; and (4) the defendant may remove materials from the properties at issue, but only so long as the defendant receives prior written approval from the commissioner and the removal is done in accordance with applicable provisions of law.

The plaintiffs, in responding to the defendant's request that this court take judicial notice of the plea agreement, filed a motion requesting that this court also take judicial notice of clarifications of the plea agreement as set forth in the transcripts of the plea hearing before the criminal court. We granted the plaintiffs' motion.

The transcripts of the plea hearing disclose that the parties agreed that a violation of the civil trial court's judgment would not result in a violation of the defendant's terms of probation as set forth in the plea agreement. Furthermore, the transcript reveals that the defendant did not understand anything in the plea agreement to prevent him from complying with the terms of the civil trial court's judgment, and, further-

more, that the state's attorney did not view the plea agreement as preventing the defendant from complying with that judgment, just as the state had never viewed the defendant's current terms of release, as set forth in the criminal court's June 27, 2000 order, as preventing the defendant from complying with the trial court's order. In response to representations by both the defendant and the state of their beliefs concerning the absence of any conflict between the plea agreement and the trial court's judgment, the criminal court stated that the plea agreement was drafted so as "not [to] interfere with the civil judgment and completion of whatever conditions and obligations [that it] require[s]." The criminal court specifically approved the written plea agreement as further clarified by the parties' respective understandings.

In sum, the defendant, upon entry of his plea agreement with the state on October 31, 2003, was no longer subject to the criminal court's June 27, 2000 order. The defendant, therefore, was not prevented by the criminal court order from complying with the trial court's judgment at the time this case was argued before this court on February 11, 2004. Moreover, the express terms of the plea agreement and the transcripts of the defendant's plea hearing make it clear that the plea agreement was not in conflict with the civil trial court's judgment, and that neither the defendant nor the state— nor, indeed, the court—viewed it to be in conflict.

On the basis of these facts, we conclude that the defendant's claim that the trial court's judgment conflicts with the criminal court's order is moot. As we already have stated, the defendant was no longer subject to the criminal court order at the time this case was argued, and, therefore, any conflict that may have existed between the criminal court order and the trial court's judgment no longer affected the defendant. Moreover, the record does not reveal, and the defendant

does not claim, that he was subjected to any enforcement action stemming from his purported inability, due to a conflict between the criminal court order and the trial court's judgment, to comply with the terms of either the order or the judgment. The defendant, in fact, does not point to any harm flowing from the period during which he was subject to both the criminal court order and the trial court's judgment. Therefore, because the defendant cannot point to a live controversy or identify a harm for which this court is able to provide a remedy, we decline to consider the defendant's claim because it is moot. See *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125–26, 836 A.2d 414 (2003) ("[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." [Internal quotation marks omitted.]).

The defendant also claims that his due process rights were violated by internal inconsistencies within the trial court's judgment. Specifically, the defendant claims that certain obligations and prohibitions contained within the stipulated judgment conflict with certain obligations and prohibitions within the consent order, and that the trial court's adoption of the terms of both orders renders the trial court's judgment internally inconsistent and in violation of his due process rights. We disagree.

The defendant cites several cases in support of his claim that the alleged conflicts and inconsistencies violated his due process rights. Of these cases, only one contains language that can be read to support this prop-

osition. In *Korematsu* v. *United States*, 323 U.S. 214, 220, 65 S. Ct. 193, 89 L. Ed. 194 (1944), the United States Supreme Court noted that "a person cannot be convicted for doing the very thing which it is a crime to fail to do." The court, however, did not indicate whether such a conviction would constitute a violation of due process. Even if we were to assume that this language does provide a basis for the defendant's due process claim, the specific facts of this case do not reveal a violation of the defendant's due process rights. See *Burton* v. *Mottolese*, 267 Conn. 1, 19, 835 A.2d 998 (2003) ("[d]ue process is inherently fact-bound" [internal quotation marks omitted]).

We reject the defendant's claim that the trial court's order enjoining him from engaging in any business involving the transfer, management, handling, or disposal of any solid waste on any of his parcels without first obtaining the necessary permits from the commissioner and the town, as required by the consent order, conflicts with another of the trial court's orders, pursuant to the stipulated judgment, requiring the defendant to remove and dispose of all solid waste brought to the site without a permit. We also reject the defendant's claim that the trial court's judgment was inconsistent in that it ordered the removal and disposal of all solid waste disposed of without a permit and the cessation of all excavation and filling activities, and, specifically, that removal and disposal of waste is impossible without excavation, and, therefore, that one part of the trial court's judgment required him to perform tasks prohibited by another part of the judgment.

We note that when the defendant identified the previously cited inconsistencies in his motion requesting a stay of the trial court's judgment, the plaintiffs filed a joint motion, which the trial court granted, seeking to modify some of the language in the court's judgment. These modifications specified that all excavation *not*

*required by the consent order,* cease, and, further, that no removal of solid waste may occur, *except in accordance with the consent order.* In other words, the modifications clearly demonstrate that the requirements of the stipulated judgment, which were incorporated in the trial court's judgment along with the requirements of the consent order, are subordinate to the requirements of the consent order and cannot be read to conflict with the requirements and prohibitions set forth in the consent order. We conclude, therefore, that even if the trial court's judgment initially could have been read to contain some conflicting terms, the modifications eliminated the potential conflict by making all affirmative requirements in the stipulated judgment subject to approval by the commissioner in accordance with the terms of the consent order. We conclude, therefore, that there currently are no internal inconsistencies or conflicts in the trial court's judgment, and, as a result, we reject the defendant's claim that the judgment violated his due process rights.

## II

The defendant next claims that the definition of " '[s]olid waste,' " as set forth in General Statutes § 22a-207 (3)[6] is unconstitutionally vague[7] and, as a result, failed to give the defendant adequate notice as to which

---

[6] General Statutes § 22a-207 (3) provides: " 'Solid waste' means unwanted or discarded solid, liquid, semisolid or contained gaseous material, including, but not limited to, demolition debris, material burned or otherwise processed at a resources recovery facility or incinerator, material processed at a recycling facility and sludges or other residue from a water pollution abatement facility, water supply treatment plant or air pollution control facility . . . ."

[7] The defendant makes no separate and independent claim under our state constitution. We consider his claim, therefore, as presented under the federal constitution's fourteenth amendment. The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

of his waste disposal operations required permits pursuant to §§ 22a-208a, 22a-208b, 22a-208c and 22a-430 (b). The defendant further claims that § 22a-207 (3) is unconstitutionally vague because it was enforced against him arbitrarily. The inadequate notice and arbitrary enforcement, the defendant argues, rendered the trial court's conclusion that his unpermitted activities violated §§ 22a-208a, 22a-208b, 22a-208c and 22a-430 (b) improper and the trial court's order that he pay penalties based on those violations an infringement of his due process rights. We disagree with the defendant.

"As a threshold matter, it is necessary to discuss the applicable standard of review. A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citations omitted; internal quotation marks omitted.) *Ferreira* v. *Pringle*, 255 Conn. 330, 355–56, 766 A.2d 400 (2001).

"The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness

is determined by the statute's applicability to the particular facts at issue. . . . To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the statute]. . . . Thus, outside the context of the first amendment, in order to challenge successfully the facial validity of a statute, a party is required to demonstrate as a threshold matter that the statute may not be applied constitutionally to the facts of [the] case." (Citations omitted; internal quotation marks omitted.) *Packer* v. *Board of Education*, 246 Conn. 89, 105–106, 717 A.2d 117 (1998).

The defendant's claim does not implicate his first amendment rights. Rather, the essence of the defendant's claim is that the statutory distinctions between materials that are defined as " '[s]olid waste' " pursuant to § 22a-207 (3) and materials defined as " '[c]onstruction and demolition waste,' " or " '[c]lean fill' " or " '[b]ulky waste,' " as defined in §§ 22a-208a-1 (10)[8] and (13)[9] and 22a-209-1[10] of the Regulations of Connecticut

---

[8] Section 22a-208a-1 (10) of the Regulations of Connecticut State Agencies provides: " 'Bulky waste' means land clearing debris and waste resulting directly from demolition activities other than clean fill."

[9] Section 22a-208a-1 (13) of the Regulations of Connecticut State Agencies provides: " 'Construction and demolition waste' means the waste building materials or packaging resulting from construction, remodeling, repair or demolition operations on houses, commercial buildings, and other structures, excluding asbestos, clean fill as defined in regulations adopted under section 22a-209 of the general statutes, or solid waste containing greater than de minimis quantities, as determined by the commissioner of environmental protection, of (A) radioactive material regulated pursuant to section 22a-148 of the general statutes, (B) hazardous waste as defined in section 22a-115 of the general statutes, and (C) liquid and semi-liquid materials including but not limited to adhesives, paints, coatings, sealants, preservatives, strippers, cleaning agents, oils and tars."

[10] Section 22a-209-1 of the Regulations of Connecticut State Agencies provides: " 'Clean fill' means (1) natural soil (2) rock, brick, ceramics, concrete, and asphalt paving fragments which are virtually inert and pose neither a

State Agencies, are confusing and ambiguous. Depending on which side of a given distinction certain materials fall, the defendant claims, a permit is either required by §§ 22a-208a, 22a-208b and 22a-208c, or is not required. The lack of a clear distinction, he argues, renders the definitions, and the statutes that contain them, vague and, therefore, void, because they failed to provide him with adequate notice as to what materials required a permit, and left him vulnerable to arbitrary enforcement actions on the part of the commissioner's enforcement officers.

The defendant, however, "[i]n order to challenge successfully, on due process grounds, the vagueness of [any] statute as applied to [the] particular facts [of his case] . . . must prove that the policies advanced by the void for vagueness doctrine were violated in his case. Specifically, [he] must show . . . (1) [that] the statute does not provide fair warning that it applies to the conduct at issue, or (2) that he was the victim of arbitrary enforcement practices." *Packer* v. *Board of Education*, supra, 246 Conn. 106–107.

The defendant's claim fails in the face of this standard because the vagueness that he claims disappears when the statute is applied to him and his conduct. In relation to the actual materials and operations in question, the trial court made the following factual findings: (1) the defendant brought large amounts of waste to one of his parcels of property after his consent or ·r with the commissioner, which enjoined him from continuing any

pollution threat to ground or surface waters nor a fire hazard and (3) polluted soil as defined in subdivision (45) of subsection (a) of section 22a-133k-1 of the Regulations of Connecticut State Agencies which soil has been treated to reduce the concentration of pollutants to levels which do not exceed the applicable pollutant mobility criteria and direct exposure criteria established in sections 22a-133k-1 through 22a-133k-3 of the Regulations of Connecticut State Agencies and which soil is reused in accordance with R.C.S.A. subdivision (3) of subsection (h) of section 22a-133k-2 of such regulations."

and all unpermitted solid waste disposal operations on the property, went into effect; (2) the defendant continued to engage in unpermitted solid waste sorting and transfer operations in violation of the consent order and the various statutes it was designed to enforce; (3) the defendant continued the illegal and unpermitted disposal of used tires in the tire pond; (4) the materials at issue did, in fact, constitute " '[s]olid waste' " as defined by § 22a-207 (3) in that they contained significant amounts of construction and demolition debris, as well as fragmented metal, crushed glass and tires. These findings, the trial court stated, were proven by more than the required preponderance of the evidence, and the defendant failed to rebut the plaintiffs' evidence, or even to attempt to refute it in most instances.

In light of these factual findings, we conclude that the defendant, who had decades of experience in waste disposal, was fairly warned by the definition of " '[s]olid waste' " set forth in § 22a-207 (3) that the estimated 57,000 cubic yards of demolition and construction materials, scrap metal, fragmented metal, crushed glass and used tires that he brought to his property between May 28, 1998—the day that the consent order went into effect, and October 26, 1999—the day of his arrest on criminal charges—constituted "solid waste" and, therefore, fell within the regulatory ambit of § 22a-208a, which required the defendant to obtain a permit for the disposal of a mere ten cubic yards of waste.

We further agree with the trial court that the definition of " '[s]olid waste' " in § 22a-207 (3) is not rendered unconstitutionally vague due to its arbitrary or discriminatory application to the defendant's activities by the commissioner's employees. In reaching this determination, we are mindful that "[w]hile it is true that the application of [§ 22a-207 (3)] to any particular case is irreducibly fact-specific, the same can be said of every statute, and does not suggest a constitutional infirmity."

*Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 325, 732 A.2d 144 (1999).

The defendant signed the consent order with the commissioner and subsequently disregarded its prohibitions and ignored its obligations, one of which was to cease all unpermitted activities that required a permit and to obtain permits before resuming any such activity. Sections 22a-208a and 22a-430 (b) required the defendant to obtain permits for the activities he conducted and the materials he brought to his properties. He failed to obtain those permits, and this failure induced the various enforcement actions taken against him by the commissioner.

The defendant does not claim that other waste disposal operators were treated differently by the commissioner for violations of consent orders and §§ 22a-208a and 22a-430 (b). He merely argues that an enforcement officer's testimony at trial, namely that, hypothetically speaking, the presence of one toothpick in material that could otherwise be classified as " '[c]lean fill' " under § 22a-209-1 of the Regulations of Connecticut State Agencies, may render the material " '[s]olid waste' " pursuant to § 22a-207 (3), indicates that he may be accused of violations due to the presence of a toothpick in otherwise clean fill. Such a hypothetical answer to a hypothetical question does not establish, however, that the defendant was treated in an arbitrary and discriminatory manner by the commissioner's enforcement officers, during the time he was claimed to be in violation of the law.

The trial court found that the material brought to the properties by the defendant contained, among other things, significant amounts of wood, metal, rubber and glass. The commissioner, therefore, did not label this material " '[s]olid waste' " pursuant to § 22a-207 (3) because it contained a toothpick, and the defendant did

not claim that other similarly situated waste disposal operators have handled materials similar to the materials the defendant handled and were exempted from the obligation to obtain permits pursuant to §§ 22a-208a and 22a-430 (b).

## III

The defendant next claims that the trial court did not perform the proper analysis under §§ 22a-226a and 22a-438 (a), and *Carothers* v. *Capozziello*, 215 Conn. 82, 103–104, 574 A.2d 1268 (1990), in determining the amount owed by the defendant in civil penalties. We disagree.

Sections 22a-226a and 22a-438 (a) allow for the assessment of civil penalties against individuals who have been found by a court to have violated the Solid Waste Management Act and the Water Pollution Control Act. Penalties can be assessed for each violation and for each day that the violation occurred. In determining the amount in penalties for which a defendant may be liable, § 22a-438 (a) provides that a court "may consider the nature, circumstances, extent and gravity of the violation, the person or municipality's prior history of violations, the economic benefit resulting to the person . . . from the violation, and such other factors deemed appropriate by the court. . . ." In *Carothers* v. *Capozziello*, supra, 215 Conn. 103–104, we set forth additional factors to be considered by a court in assessing civil penalties pursuant to General Statutes § 22a-226, and in *Keeney* v. *L & S Construction*, 226 Conn. 205, 214, 626 A.2d 1299 (1993), we held that those factors also guide courts in assessing penalties under § 22a-438. The factors "include, but are not limited to: (1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statu-

tory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community." *Carothers* v. *Capozziello*, supra, 103–104.

The defendant claims that the trial court did not consider the second factor or give sufficient weight to his evidence of good faith compliance efforts when considering the fourth factor. Specifically, the defendant claims that: (1) the court should have considered the effect of the dissolution of his businesses on his ability to pay the penalties assessed; and (2) the court's finding that he did not prove any good faith efforts to comply with the statutes at issue or the consent order or stipulated judgment was contrary to the evidence and, therefore, improper. We disagree.

The defendant claimed at trial that his corporations were no longer in operation, but he never claimed to the trial court that he, personally, was unable to pay the penalties. The defendant is the only party defendant to this appeal. The fact that corporations that he controls may no longer be operating does not establish as a matter of law that he, personally, is without resort to resources with which to pay the civil penalties assessed against him. Furthermore, the interest protected by the second *Carothers* factor was not at stake in this case, because the defendant's businesses were already insolvent at the time penalties against the defendant were assessed. The trial court, therefore, had no obligation to consider the effect that its assessment of the penalties on the defendant, personally, may have had on his already defunct businesses.

The defendant's claim that the trial court improperly concluded that he failed to prove good faith compliance efforts, as provided for in the fourth *Carothers* factor, is also without merit. The defendant claims that he produced evidence during the hearing before the trial

court showing that he had "identified" an environmental engineering firm to plan for the closure of the tire pond as well as "sought the assistance" of an attorney with the United States Environmental Protection Agency. The defendant furthered claimed that his "not hinder[ing]" or "imped[ing]" department officials from gaining access to his properties evinced a good faith effort to comply with the statutes he was found to have violated. The trial court, however, found that the conduct did not constitute the kind of good faith contemplated by the fourth *Carothers* factor, and, furthermore, that the court was "entitled to take into account the defendant['s] history of non-compliance." The record is rife with examples of the defendant's flagrant disregard of waste management and water pollution control statutes, and the various obligations and prohibitions to which he had agreed in his consent order with the commissioner and his stipulated judgment with the town. Specifically, the trial court found, among other things, that the defendant: (1) failed to submit for the commissioner's review and approval the proposal for a bond adequate to cover the costs of closing the tire pond; (2) failed to obtain a permit before discharging substances or materials into bodies of water; (3) failed to take steps to close the tire pond or stabilize the dikes separating the pond from the marshes and river; (4) disposed of large quantities of solid waste without a permit; (5) operated a solid waste sorting operation without a permit; (6) operated a solid waste transfer station without a permit; and (7) failed to remediate the marshlands abutting the northeastern corner of his property. In light of the defendant's record and lengthy history of violations—both civil and criminal—the trial court was within its discretion in finding that the defendant failed to prove sufficient good faith efforts to justify decreasing the amount in penalties assessed against him.

## IV

Finally, the defendant claims that the trial court improperly found that he was liable on all counts of the plaintiffs' complaint. Specifically, the defendant claims that the trial court did not give him the "solicitous" attention that he deserved as a pro se defendant when it "summarily dismissed every one of [his] legal positions, statements, exhibits, and witnesses, without analysis." We interpret the defendant's claim as questioning the validity of the trial court's factual findings and the court's resulting conclusions of law.

"[A]s a preliminary matter, we set forth the standard of review for the [defendant's] claims of evidentiary insufficiency. [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000). We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. *Briggs* v. *McWeeny*, [260 Conn. 296, 322, 796 A.2d 516 (2002)]. Although we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . we will not uphold a factual determination if we are left with the definite and firm conviction that a mistake has been made. . . . Id." *Burton* v. *Mottolese*, supra, 267 Conn. 37–38.

Essentially, the defendant claims that the trial court did not perform its function of weighing and interpreting the evidence. We disagree. The trial court listed all the facts that it found to be proven by the plaintiffs, and then weighed the plaintiffs' evidence against the defendant's evidence. In numerous instances, the court

noted that the defendant simply had failed to rebut the plaintiffs' evidence at all; and in other instances, the court specifically stated that it disbelieved the defendant's evidence. Moreover, after careful review of the trial court's decision and the evidence to which it cites, we are not left with the firm and definite conviction that the conclusions reached by the trial court constitute mistakes of law.

We further disagree with the defendant's claim that the trial court did not show him the " 'solicitous attention' " that he required as a pro se defendant. The transcripts are replete with examples of such attention as well as examples of the defendant's skill at representing his interests. The defendant expresses incredulity at the fact that the trial court found for the plaintiffs and not for him, but it is nonetheless clear from the record that the trial court had ample evidence on which to base its findings of fact and the resulting conclusions of law.

The judgment is affirmed.

In this opinion the other justices concurred.