******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DIANE GORSKI *v.* STEPHEN J. MCISAAC
(AC 36446)

Gruendel, Sheldon and Mullins, Js.

*Argued December 9, 2014—officially released March 31, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Albis, J.)

*Stephen J. McIsaac*, self-represented, the appellant (defendant).

*W. Anthony Stevens*, *Jr.*, with whom, on the brief, was *Ronald T. Scott*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. We are called upon in this appeal to apply and interpret Massachusetts General Laws Chapter 208, § 28, concerning child support orders. The self-represented defendant, Stephen J. McIsaac, appeals from the judgment of the trial court, denying his amended postjudgment motion for a "modification of judgment." In that motion, the defendant sought, inter alia, to have his child support obligation terminated. On appeal, the defendant claims that the trial court (1) improperly construed Massachusetts General Laws Chapter 208, § 28, and found that the child was domiciled with the plaintiff, Diane Gorski, and that the child was principally dependent on her, (2) improperly rejected his claim that the statute was unconstitutionally vague as applied to him, and (3) erroneously concluded that the child support garnishment order issued by the Massachusetts court did not violate federal law. We affirm the judgment of the trial court.

The following procedural history and findings made by the trial court are relevant to this appeal. The defendant and the plaintiff were divorced by a judgment of the Massachusetts Probate and Family Court on September 21, 1998. Under the terms of the judgment, the plaintiff was awarded sole legal and physical custody of the parties' only child, M, who was born on February 9, 1995. The judgment ordered the defendant to pay to the plaintiff $200 per week in child support for the unemancipated child,[1] and for the parties to share in the eventual cost of M's college expenses to the extent that they are able.

The Massachusetts court rendered judgments modifying the September 21, 1998 judgment on April 28 and September 22, 2000. The modifications in 2000 did not alter the support provisions of the divorce judgment. In the September 22, 2000 modification judgment, however, the Massachusetts court ruled that it would decline any further jurisdiction over M's custody or visitation because, by then, she had resided in Connecticut for well over one year. The plaintiff, on September 4, 2002, filed a certified copy of the Massachusetts dissolution judgment with our Superior Court in accordance with General Statutes § 46b-71.[2]

By the time the trial court rendered the relevant judgment in the present case, M had attained the age of nineteen, graduated from high school, and enrolled as a freshman at the University of Connecticut at the state resident tuition rate. The parties each agreed to pay 40 percent of M's college expenses, with M being responsible for the remaining 20 percent. Prior to moving into her dormitory, M had resided with the plaintiff in Glastonbury and had attended high school in Connecticut. M is not able to support herself.

The plaintiff maintains M on her health insurance,

pays her unreimbursed medical expenses, gives her spending money and money for necessities while M is at school, allows M to drive her vehicle when she is at home, and pays the additional cost to have M on her automobile insurance. The plaintiff also coordinates M's medical care and appointments. M has a bedroom in the plaintiff's house, which contains whatever furnishings and items M did not take to her dormitory.

The defendant also provides spending money for M, buys her clothing and other items, and pays for her dining and entertainment expenses when she visits him in the Boston area. He also has purchased cell phones and a laptop for her over the years, and pays for the internet service on her cell phone. M relies on both parents for emotional support and other help.

On June 21, 2013, the defendant filed a "motion for modification of judgment," and, on July 25, 2013, he filed an "amended motion for modification of judgment."[3] The defendant sought the termination of his $200 weekly child support payment on the ground that M had turned eighteen and had graduated from high school. Because he continued to make child support payments, via a wage garnishment, the defendant also sought the return of all monies he had given to the plaintiff after M graduated from high school. Additionally, in count two of his motion, the defendant requested that, if Massachusetts law applied to this case, his support order be terminated, and, to the extent that any support was ordered in this case, that the plaintiff be ordered to pay child support to the defendant because M "will be domiciled in the home of the defendant and will [be]/is principally dependent upon the defendant for maintenance."

The court heard argument on the amended motion on November 15, 2013. Following the hearing, the parties were given an opportunity to, and did, submit post-hearing briefs. The court issued a written memorandum of decision on January 7, 2014. In its decision, in accordance with Massachusetts General Laws Chapter 208, § 28, the court found that M was domiciled with the plaintiff and principally dependent on the plaintiff for maintenance. The court further found that Massachusetts General Laws Chapter 208, § 28, was not unconstitutional and, finally, that the original wage garnishment order did not violate federal law. As a result, the court denied the defendant's motion. This appeal followed. Both parties agree that Massachusetts law applies to this case. See General Statutes § 46b-71 (b).

I

The defendant first claims that the "plaintiff did not prove, by a preponderance of evidence, that she has met the statutory test [to receive child support] under Massachusetts General Laws Chapter 208, § 28."[4] In particular, he argues that "[i]n order for the plaintiff to be

entitled to child support, [she] must [prove] that [M] is domiciled with her." Additionally, the defendant claims that the "[p]laintiff did not prove that [M] is principally dependent on her . . . ." We are not persuaded by either of these contentions.

First, we are not persuaded by the defendant's proposition that the plaintiff had the burden of proof in the amended motion for modification when the defendant was the party seeking to terminate his child support obligation in that motion. Second, we conclude the defendant has failed to prove that the court's findings that M was domiciled with the plaintiff and that M was principally dependent on the plaintiff were clearly erroneous.

"Massachusetts law provides support beyond age eighteen for any child (1) who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance, or (2) who has attained age twenty-one but who has not attained age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program . . . ." (Internal quotation marks omitted.) *Freddo* v. *Freddo*, 83 Mass. App. 353, 356, 983 N.E.2d 1216, review denied, 465 Mass. 1104, 987 N.E.2d 596 (2013). In bringing a motion to modify a judgment for child support, the person seeking a modification bears the burden of demonstrating that a modification is warranted. See *Pierce* v. *Pierce*, 455 Mass. 286, 293, 916 N.E.2d 330 (2009) ("[t]o be successful in an action to modify a judgment for . . . child support, the petitioner must demonstrate a material change of circumstances since the entry of the earlier judgment" [internal quotation marks omitted]); *Kelley* v. *Kelley*, 64 Mass. App. 733, 739, 835 N.E.2d 315 ("it has . . . been held repeatedly . . . that *no modification can be made unless the party seeking modification shows a change of circumstances since the entry of the earlier judgment*" [emphasis in original; internal quotation marks omitted]), review denied, 445 Mass. 1107, 838 N.E.2d 577 (2005).

Accordingly, the defendant, who was the movant in this case, bore the burden of establishing that M no longer was domiciled with the plaintiff or that M no longer was principally dependent on the plaintiff for maintenance. Nevertheless, regardless of who bore the burden before the trial court in this case, the court found, on the basis of the evidence presented, that M was domiciled with the plaintiff and that she was principally dependent on the plaintiff.

We read the defendant's claim to include a challenge to the court's findings concerning M's domicile and maintenance. In its memorandum of decision, the court specifically found: "[T]he domicile of [M] is with her

mother in Glastonbury . . . . This has been [M's] home for many years, as she has been in the sole custody of her mother since the dissolution of the parties' marriage. It is the place she reported as her home when she registered as a student at the University of Connecticut. Although it may be her stated intention to reside primarily with her father in the future, that statement of future intention does not change her present domicile."

With respect to whether M is principally dependent on the plaintiff for her maintenance, the court found that, although both parents contribute financially to M's education and support, "the contributions of the plaintiff, as a whole, continue to outweigh those of the defendant at this point in time." The court elaborated: "The plaintiff has provided [M] with her principal home and the basic necessities of life, and continues to maintain a room for her in the family home during [M's] absences to attend college. She and the defendant pay equal shares of [M's] college costs. She provides [M's] current health insurance and pays all of [M's] unreimbursed medical expenses. She pays the cost of [M's] automobile liability insurance and continues to provide [M] with a car to drive when she is home from college. The plaintiff provides [M] with spending money and necessities while she is away at school. . . . The court finds that, on balance, the plaintiff has provided and continues to provide more of the resources for [M's] maintenance, including living space for her in the home which remains [M's] domicile, than does the defendant." The defendant challenges these findings.

Turning first to M's domicile, it is apparent that she has been domiciled with the plaintiff and there has been no change in her domicile since the original order granting the plaintiff sole custody of M. "A completed change of domicil[e] demands the concurrence of both physical presence and the requisite state of mind." *Dotson* v. *Commissioner of Revenue*, 82 Mass. App. 378, 387, 974 N.E.2d 69, review denied, 463 Mass. 1111, 977 N.E.2d 561 (2012). "A change of domicil[e] takes place when a person with the capacity to change [her] domicil[e] is physically present in a place and intends to make that place [her] home for the time at least." (Internal quotation marks omitted.) *Cerutti-O'Brien* v. *Cerutti-O'Brien*, 77 Mass. App. 166, 169 n.4, 928 N.E.2d 1002 (2010).

The issue of a person's domicile presents "a question of fact for the trial judge. . . . We review the judge's findings of fact only to determine whether they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) Id., 169. "To prevail on appeal on the basis of an assault on a judge's factual findings is no easy matter, for we accept the judge's findings of fact as true unless they are clearly erroneous. . . . [The trial judge] had the opportunity to view the witnesses' demeanor, as well as to listen to their testimony. In [a]

fact-intensive case, [the judge] was in the best position to assess the credibility of the witnesses and to determine the facts. . . . We will uphold [the judge's] findings unless we have a definite and firm conviction that a mistake has been committed. . . . It is the appellant's burden to show that a finding of fact is clearly erroneous. . . . It is not sufficient to challenge the judge's findings by reciting other evidence in the record that [the judge] may not have credited." (Citations omitted; internal quotation marks omitted.) *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 456 Mass. 627, 636–37, 925 N.E.2d 513 (2010); see *Jewett* v. *Jewett*, 265 Conn. 669, 691, 830 A.2d 193 (2003) (finding of fact is clearly erroneous when there is no evidence in record to support it or when reviewing court is left with definite and firm conviction that mistake has been committed).

In this case, the defendant selectively chooses the testimony that supports his position. The trial court, however, heard all the evidence in support of his position that M was no longer domiciled with the plaintiff, as well as the evidence to the contrary that M continued to be domiciled with the plaintiff. It is the trial judge who assesses the credibility of the witnesses and weighs the evidence.[5] See *Millennium Equity Holdings, LLC* v. *Mahlowitz*, supra, 456 Mass. 636–37. We, on appeal, cannot retry the case, find facts or weigh evidence; this is the responsibility of the trial judge. See id. The court in this case made very clear findings as set forth previously in this opinion, namely, that the evidence showed that, since the Massachusetts judgment in 1998 granting the plaintiff sole physical custody of M, she has been and continues to be domiciled with the plaintiff. We conclude that those findings have support in the record, and we are not left with a firm conviction that a mistake has been made. Accordingly, the defendant has not established that the court's findings concerning M's domicile were clearly erroneous.

We reach the same conclusion as to the defendant's claim that the court erroneously found that M is principally dependent on the plaintiff for maintenance. The court made specific findings on this issue, including that the contributions of the plaintiff, as a whole, outweigh those of the defendant, that the plaintiff has provided M with her principal home and the basic necessities of life, that the plaintiff continues to maintain a room for M, provides M's health insurance and pays all of M's unreimbursed medical expenses, and that the plaintiff pays the cost of M's automobile insurance. Although the defendant does not agree with these findings, they have support in the record and are not clearly erroneous.

II

The defendant also claims that Massachusetts General Laws Chapter 208, § 28, is unconstitutional. Specifically, he argues that the statutory terms "domiciled" and

"principally dependent" are ambiguous, and, therefore, that the statute is void for vagueness.[6] We conclude that the terms "domiciled" and "principally dependent" are not ambiguous.

"Courts have derived the void for vagueness doctrine from the constitutional guarantee of due process." (Internal quotation marks omitted.) *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 757, 529 A.2d 1276 (1987). "A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 204, 848 A.2d 1206 (2004).

With these principles in mind, we turn to the defendant's void for vagueness claim. In so doing, our fundamental inquiry is whether a person of ordinary intelligence would comprehend the meaning of "domiciled" and "principally dependent" under Massachusetts General Laws Chapter 208, § 28. See *Ferreira* v. *Pringle*, 255 Conn. 330, 356, 766 A.2d 400 (2001) (whether person of ordinary intelligence would comprehend meaning of words in statute is fundamental inquiry).

The defendant contends that the statute is unconstitutionally vague as applied to him because the terms "domiciled" and "principally dependent" are not defined and are subject to many differing interpretations. We disagree. The courts in Massachusetts consistently have been called upon to interpret and apply these terms in family matters. See, e.g., *Eccleston* v. *Bankosky*, 438 Mass. 428, 433, 780 N.E.2d 1266 (2003); *Barnes* v. *Devlin*, 84 Mass. App. 159, 159, 993 N.E.2d 1217 (2013).

Additionally, although the terms are not defined in the relevant statute or case law, the terms have usual and accepted meanings, which are consistent with the interpretation given to the terms by the court in this case. "When a statute does not define its words we give

them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." (Citations omitted; internal quotation marks omitted.) *Estate of Gavin* v. *Tewksbury State Hospital*, 468 Mass. 123, 129, 9 N.E.3d 299 (2014) (looking, in part, to Black's Law Dictionary for definition of "claimant").

"Domicile" commonly is defined as: "[A] person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." Black's Law Dictionary (9th Ed. 2009). "Principal" is defined as: "Chief; primary; most important." Id. "Dependent" is defined as: "One who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else." Id. Clearly, each of these definitions coincides with the application of the terms as set forth in statute and as applied by the court in this case.

As found by the trial court in this case, as to M's domicile, although she may reside for a time in her dormitory at school or, from time to time, at the defendant's home, her true, fixed and permanent home at the time of the hearing was the plaintiff's home in Glastonbury. Also as found by the trial court, as to M's principal dependence, although the defendant certainly contributes to M's education and support, he is not the primary source of that support. The plaintiff is the primary source of M's support and thus, M is, as the court found, principally dependent on the plaintiff for her maintenance. Accordingly, we conclude that the defendant has failed to demonstrate that Massachusetts General Laws Chapter 208, § 28, is unconstitutionally vague as applied to the facts of this case.

### III

The final claim of the defendant is that the child support garnishment order levied long ago in this case by the Massachusetts court violates federal law. Specifically, the defendant's brief sets forth this entire claim as: "Finally, pursuant to the Uniform Family Protection Act, as appearing in 42 U.S.C. § 666 (b) (10), the child support wage garnishment order must have a termination date. In addition, the Act provides criminal penalties for noncompliance. The child support order unconstitutional[ly] violates due process by shifting the burden to the defendant in order to correct the violation of his rights, and is an ongoing violation of the defendant's right to due process." We conclude that this claim is inadequately briefed, and we, therefore, decline to review it.

"We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely

mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Citations omitted; internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Emancipation is a legal term of art that relates to the cessation of rights and duties between parent and child. . . . Whether an emancipation has occurred is a question of fact. . . . What constitutes emancipation, however, is a question of law. *Eccleston* v. *Bankosky*, 438 Mass. 428, 434 n.13 [780 N.E.2d 1266] (2003), quoting from 1 D.T. Kramer, Legal Rights of Children, § 15.01, at 665 (2d ed. 1994)." (Emphasis omitted; internal quotation marks omitted.) *Tatar* v. *Schuker*, 70 Mass. App. 436, 442 n.10, 874 N.E.2d 481 (2007). The defendant does not argue that M is emancipated.

[2] General Statutes § 46b-71 provides: "(a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended, and such certificate shall set forth the full name and last-known address of the other party to such judgment and the name and address of the court in the foreign state which rendered such judgment.

"(b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling."

[3] We note that the defendant, in contravention of Practice Book § 67-8 (b) (1), failed to include in part one of his appendix the operative July 25, 2013 amended motion for modification, and, instead, included only the June 21, 2013 motion. Because the operative pleading is contained in the court's file and available for our review, we will overlook the error.

[4] Massachusetts General Laws Chapter 208, § 28, provides in relevant part: "Upon a complaint after a divorce, filed by either parent or by a next friend on behalf of the children after notice to both parents, the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children. In furtherance of the public policy that dependent children shall be maintained as completely as possible from the resources of their parents and upon a complaint filed after a judgment of divorce, orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines promulgated by the chief justice of the trial court or if there is a need to provide for the health care coverage of the child. . . . There shall be a rebuttable presumption that the amount of the order which would result from the application of the guidelines is the appropriate amount of child support to be ordered. If, after taking into consideration the best interests of the child, the court determines that a party has overcome such presumption, the court shall make specific written findings indicating the amount of the order that would result from application of the guidelines; that the guidelines amount would be unjust or inappropriate under the circumstances; the specific facts of the case which justify departure from the guidelines; and that such departure is

consistent with the best interests of the child. The order shall be modified accordingly unless the inconsistency between the amount of the existing order and the amount of the order that would result from application of the guidelines is due to the fact that the amount of the existing order resulted from a rebuttal of the guidelines and that there has been no change in the circumstances which resulted in such rebuttal; provided, however, that even if the specific facts that justified departure from the guidelines upon entry of the existing order remain in effect, the order shall be modified in accordance with the guidelines unless the court finds that the guidelines amount would be unjust or inappropriate under the circumstances and that the existing order is consistent with the best interests of the child. . . . The court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance. The court may make appropriate orders of maintenance, support and education for any child who has attained age twenty-one but who has not attained age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program, excluding educational costs beyond an undergraduate degree. . . .”

[5] Insofar as the defendant also argues that the court abused its discretion in not allowing testimony about M's intent to stay with the defendant in the future, we agree with the trial court that M's plans for the future, including a future domicile, were not relevant to the trial court's determination of whether the defendant sufficiently had established at the hearing that he was entitled to a termination of the current support order. The court appropriately was concerned with the facts at the time of the hearing, not with future possibilities.

[6] The defendant also claims that the statute is “underinclusive because it creates a separate class of people subject to the criminal laws . . . .” He provides no analysis for this claim, however. Accordingly, we decline to review it. See *Salce* v. *Wolczek*, 314 Conn. 675, 697 n.10, 104 A.3d 694 (2014) (declining to review claim when brief of issue limited to one paragraph that did not include any authority or substantive analysis to support claim).

———————————————