# STATE OF CONNECTICUT *v.* GREGORY B. WINOT
## (SC 17696)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.*

* This case originally was argued before a panel of this court consisting
of Chief Justice Rogers and Justices Norcott, Katz, Vertefeuille and Zarella.
Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte,
ordered that the case be considered en banc. Accordingly, Justices Palmer
and McLachlan were added to the panel, and they have read the record,
briefs and transcript of oral argument.

Argued January 11, 2008—officially released February 16, 2010

*Marjorie Allen Dauster,* senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, *James E. Thomas,* former state's attorney, and *Vicki Melchiorre* and *Donna Mambrino,* senior assistant state's attorneys, for the appellant (state).

*Jon L. Schoenhorn,* for the appellee (defendant).

ROGERS, C. J. In this certified appeal,[1] the state appeals from the judgment of the Appellate Court reversing the conviction of the defendant, Gregory B. Winot, following a jury trial, of kidnapping in the second degree[2] in violation of General Statutes § 53a-94 (a).[3] See *State* v. *Winot*, 95 Conn. App. 332, 362, 897 A.2d 115 (2006). We agree with the state that the Appellate Court improperly concluded that § 53a-94 (a) was unconstitutionally vague as applied to the defendant's conduct. Id., 343. Moreover, we disagree with the defendant that we should affirm the judgment of the Appellate Court on the alternative ground that it improperly concluded that the trial court's exclusion of certain evidence was proper. Accordingly, we reverse in part the judgment of the Appellate Court.

[1] We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that General Statutes § 53a-94 is unconstitutional as applied to the facts of this case?" *State* v. *Winot*, 279 Conn. 905, 901 A.2d 1229 (2006). The defendant's petition for certification to appeal was denied. *State* v. *Winot*, 279 Conn. 904, 901 A.2d 1229 (2006).

[2] The defendant also was convicted of attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-94 (a) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The Appellate Court rejected the defendant's multiple challenges to evidentiary rulings and upheld the attempted kidnapping conviction; *State* v. *Winot*, 95 Conn. App. 332, 357, 897 A.2d 115 (2006); but reversed the risk of injury conviction on the basis of evidentiary insufficiency. Id., 362.

[3] General Statutes § 53a-94 (a) provides: "A person is guilty of kidnapping in the second degree when he abducts another person." Pursuant to General Statutes § 53a-91 (2), " '[a]bduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation." General Statutes § 53a-91 (1) defines " '[r]estrain,' " in relevant part, as "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

The Appellate Court summarized the relevant facts, which the jury reasonably could have found, as follows: "On the evening of July 19, 2002, at approximately 6 p.m., the twelve year old female victim was walking alone on Spruce Street in Manchester when she noticed a green car moving slowly along the opposite side of the street. The defendant, the driver of the car, stopped the car in the middle of the road and lowered the driver's side window. He pointed his finger at the victim and yelled, 'I'm going to get you. You're getting in my car.' He then got out of the car and walked across Spruce Street toward the victim with his arms stretched in front of him as if he was going to give the victim a bear hug. When he was approximately six feet from the victim, she ran away toward her house on Bissell Street. It took her only a matter of seconds to reach her house, where she told her mother what had transpired. The incident was not reported to the police.

"Four days later, on July 23, 2002, at approximately 5 p.m., the victim was again walking home on Spruce Street when she noticed the same green car and driver. The defendant stopped the vehicle and rolled down the window. This time, without saying anything to the victim, he left the car and began walking toward her. She began to walk faster, but the defendant forcibly took her right arm. When she asked him to let go, he refused, yelling, '[n]o, it's too wet out here; you're getting in my car today.' He tried to pull her toward his car, but she resisted, pulling back in the opposite direction. To get him to release her, the victim then leaned over to bite the defendant, at which point he quickly let go and rushed back to his car. In doing so, the defendant was almost hit by a maroon car. Upon being released, the victim ran home and told her mother what had transpired. The entire incident lasted only a few seconds.

"The victim's mother called the police, and the victim gave a signed statement regarding the incidents, which took place on July 19 and 23, 2002. The victim also provided the police with a license plate number.

"The police traced the license plate number to the defendant. Upon arriving at his residence that same day, the police observed a turquoise Ford Thunderbird with plates matching the number provided by the victim. Officer David Evans of the Manchester police department asked the defendant whether he had been on Spruce Street around 5 p.m. Although the defendant admitted that he had driven through that area on his way home from work, he initially denied having spoken to anyone. Subsequently, however, he admitted to Sergeant Jeffrey Lampson that he had offered a young woman a ride. The police brought the victim to the defendant's house, where she positively identified him as the man who had approached her on both occasions. The defendant was then arrested, handcuffed and placed in a police cruiser. Thereafter, Officer Evans obtained the defendant's permission to search his car. The subsequent search revealed a rope noose and various debris in the trunk. Only the noose was seized. At the police station, the defendant admitted that on his way home from work, he had offered a young girl a ride home because it was raining, but denied any wrongdoing.

"In a three count substitute information, the state charged the defendant with attempt to commit kidnapping in the second degree in violation of [General Statutes] §§ 53a-94 (a) and 53a-49 (a) (2), kidnapping in the second degree in violation of § 53a-94 (a) and risk of injury to a child in violation of [General Statutes] § 53-21 (a) (1). After the jury found the defendant guilty on all three counts, the trial court denied the defendant's motions for a new trial and for a judgment of acquittal. The court sentenced the defendant to eight years impris-

onment followed by ten years of special parole." Id., 335–37.

The defendant's appeal from his conviction to the Appellate Court followed. There, he argued, inter alia, that § 53a-94 (a), proscribing the offense of kidnapping in the second degree, was unconstitutionally vague as applied to his conduct on July 23, 2002. Specifically, he argued that, in light of the brevity of his encounter with the victim and the minimal amount of restraint he employed, the statute failed to give him fair notice that his conduct was prohibited.[4] Id., 338, 341. The Appellate Court agreed with the defendant, concluding that his movement or confinement of the victim was " 'minis-cule,' " and, therefore, that the resulting kidnapping conviction was "absurd and unconscionable . . . ." Id., 343. Moreover, according to the Appellate Court, to uphold the defendant's conviction "would risk the encouragement of arbitrary and discretionary enforce-ment of [§ 53a-94 (a)] by overzealous prosecutors." Id. This certified appeal followed.

I

The state contends on appeal that the Appellate Court improperly reversed the defendant's conviction of kid-napping in the second degree because the statute pro-scribing that crime is not unconstitutionally vague as applied to his conduct on July 23, 2002. We agree.

We begin with the applicable standard of review and general governing principles.[5] The determination of

---

[4] The defendant did not argue that the restraint he employed was incidental to his commission of another crime against the victim.

[5] The defendant did not raise separate vagueness claims under the federal and state constitutions. We previously have equated vagueness doctrine under the two documents and have declined to analyze vagueness claims any differently under the Connecticut constitution. See *Ramos* v. *Vernon*, 254 Conn. 799, 845–47, 761 A.2d 705 (2000); *Packer* v. *Board of Education*, 246 Conn. 89, 98–99, 717 A.2d 117 (1998). We adhere to that approach in the present case.

whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. *State* v. *Knybel*, 281 Conn. 707, 713, 916 A.2d 816 (2007). In undertaking such review, we are mindful that "[a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 204, 848 A.2d 1206 (2004).

"The United States Supreme Court has set forth standards for evaluating vagueness. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. . . .

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement." (Internal quotation marks omitted.) *Gonzalez* v. *Surgeon*, 284 Conn. 573, 584, 937 A.2d 24 (2007).

Tempering the foregoing considerations is the acknowledgment that many statutes proscribing criminal offenses necessarily cannot be drafted with the utmost precision and still effectively reach the targeted behaviors. Consistent with that acknowledgment, the United States Supreme Court has explained: "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten* v. *Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972); see also *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 322, 732 A.2d 144 (1999) ("Because perfect precision is neither possible nor required . . . the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted statutes. *Rose* v. *Locke*, 423 U.S. 48, 49, 96 S. Ct. 243, 46 L. Ed. 2d 185 [1975]; *Grayned* v. *Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 [1972] . . . ." [Citations omitted; internal quotation marks omitted.]). Simply put, "[w]hile some ambiguous statutes are the result of poor draftsmanship, it is apparent that in many instances the uncertainty is merely attributable to a desire not to nullify the purpose of the legislation by the use of specific terms which

would afford loopholes through which many could escape. W. LaFave & A. Scott, Criminal Law (1972) § 11, pp. 84–85." (Internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, supra, 322.

Section 53a-94 (a), by its plain terms, indisputably prohibits intentional, nonconsensual restraint of a person, by means of physical force, when that restraint is coupled with the intent to prevent that person's liberation. See footnote 3 of this opinion. It further is clear that the statutory definition of "restraint" encompasses both movement of a person from one place to another and confinement of a person in the place where a restriction of movement commences. General Statutes § 53a-91 (1); see also footnote 3 of this opinion. The Appellate Court agreed with the defendant's argument that, although he held the victim in place against her will through physical force, he did so for such a brief period of time that the statute did not afford him adequate notice that his behavior would be regarded as criminal and, moreover, to convict him of kidnapping on the basis of a brief restraint would allow for arbitrary enforcement of § 53a-94 (a). *State* v. *Winot*, supra, 95 Conn. App. 342–43. We are not persuaded.

For many years prior to the events underlying this appeal, Connecticut's appellate courts routinely rejected challenges to kidnapping convictions based on claims that the movement or confinement at issue was minimal and/or merely incidental to the commission upon the victim of another assault type crime. See *State* v. *Salamon*, 287 Conn. 509, 531, 949 A.2d 1092 (2008) (citing cases). We reasoned, in part, that "because the statutory definitions of the terms 'restrain' and 'abduct' contain no time or distance specifications, the offense of kidnapping does not require proof that the victim was confined for any minimum period of time or moved

any minimum distance."[6] Id., 531–32. Accordingly, we repeatedly explained, the touchstone for determining whether the movement or confinement at issue constituted kidnapping was not its extensiveness, but rather, "whether it was accomplished with the requisite intent, that is, to prevent the victim's liberation."[7] Id., 532.

---

[6] Additionally, we reasoned, "because there is no general prohibition against a person being convicted of multiple crimes arising out of the same act or acts, it is of no moment that the confinement or movement that provides the basis of a kidnapping conviction is merely incidental to the commission of another crime against the victim." State v. Salamon, supra, 287 Conn. 532.

[7] In Salamon, we examined more closely the contours of the intent to prevent a victim's liberation. Although we did not attempt to provide a comprehensive definition of that intent, we determined that the legislature meant to exclude from its scope an intent to confine or move a victim that is wholly incidental to the commission of another crime which, by its nature, necessitates some restraint of the victim. State v. Salamon, supra, 287 Conn. 542. We did not otherwise limit the definition of "intent to prevent . . . liberation"; General Statutes § 53a-91 (2); or restrict the jury's role in determining whether it has been proven. Indeed, we emphasized that the holding in Salamon was not a complete refutation of the principles established by our prior kidnapping jurisprudence, specifically, that no minimum period of confinement or degree of movement is required to establish kidnapping. State v. Salamon, supra, 546. We noted that "[w]hether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case" and that, "when the evidence reasonably supports a finding that the restraint was *not* merely incidental to the commission of some other, separate crime, the ultimate factual determination [of whether the defendant intended to prevent the victim's liberation] must be made by the jury." (Emphasis in original.) Id., 547–48. We reversed the defendant's kidnapping conviction and remanded the case for such a determination. Id., 549–50.

Subsequent to our decision in Salamon, we heard two appeals that similarly challenged kidnapping convictions on the ground that the restraint at issue was brief and wholly incidental to the commission of another crime, which, in each case, was sexual assault. See State v. DeJesus, 288 Conn. 418, 426, 953 A.2d 45 (2008); State v. Sanseverino, 287 Conn. 608, 612, 949 A.2d 1156 (2008), overruled in part by State v. DeJesus, supra, 437, superseded in part after reconsideration by State v. Sanseverino, 291 Conn. 574, 969 A.2d 710 (2009). In deciding these cases, we determined that their facts implicated the new rule announced in Salamon and, therefore, required reversal of the defendants' kidnapping convictions. See State v. DeJesus, supra, 428; State v. Sanseverino, supra, 287 Conn. 625–26. We concluded further that the correct remedy was to remand each case for a new trial in which the jury properly would be instructed as to the rule of Salamon and the state would have the opportunity to present evidence and to argue

that the restraint involved was not entirely incidental to the defendant's commission of sexual assault. *State* v. *Sanseverino*, supra, 291 Conn. 589–90; *State* v. *DeJesus*, supra, 438–39. We reasoned that double jeopardy concerns did not mandate acquittal when the evidence presented was sufficient to establish kidnapping under the standard applicable at the time of trial, but not under the standard newly articulated in *Salamon*, because any insufficiency in proof resulted only from the subsequent change in the law. *State* v. *Sanseverino*, supra, 291 Conn. 588; *State* v. *DeJesus*, supra, 436. Following our decision in *DeJesus*, we issued, sua sponte, an order directing the parties in the present case to file simultaneous supplemental briefs addressing the impact of that decision on this matter.

Upon review of those briefs, contrary to the view of the dissenting justices, we are not persuaded that the rule of *Salamon* and, therefore, the remedy established by *DeJesus*, is implicated by the facts of the present appeal. First, the defendant did not claim, before either the trial court or the Appellate Court, that § 53a-94 (a) was unconstitutionally vague as applied because his restraint of the victim was incidental to his commission of another crime, but rather, only because the restraint was of short duration. Compare *State* v. *DeJesus*, supra, 288 Conn. 426–27 (defendant argued that restraint was wholly incidental to commission of sexual assault); *State* v. *Sanseverino*, supra, 287 Conn. 619 (same); *State* v. *Salamon*, supra, 287 Conn. 516 (defendant argued that conduct constituted physical assault to which any restraint was incidental).

Second, there was no evidence presented at trial suggesting that the defendant, when he grabbed the victim's arm, was in the process of committing another crime against her to which the restraint potentially was incidental. Compare *State* v. *DeJesus*, supra, 288 Conn. 422–23 (evidence of sexual assault during restraint); *State* v. *Sanseverino*, supra, 287 Conn. 615 (same); *State* v. *Salamon*, supra, 287 Conn. 515 (evidence that defendant grabbed victim by neck, causing her to fall, punched her and shoved his fingers down her throat while holding her down by her hair, causing her injury); *State* v. *Misner*, 410 N.W.2d 216, 223 (Iowa 1987) (because there was substantial evidence to support claim that confinement and movement of hostages was incidental to other crime, court should have so instructed); *People* v. *Rappuhn*, 78 Mich. App. 348, 354, 260 N.W.2d 90 (1977) (where there was evidence of forced sexual activity, incidental instruction was warranted); with *Brown* v. *State*, 132 Ga. App. 399, 402, 208 S.E.2d 183 (1974) (because evidence did not disclose any other crime involved, unnecessary for court to decide whether incidental rule would apply); *People* v. *Kittle*, 140 Ill. App. 3d 951, 954–55, 489 N.E.2d 481 (1986) (noting that factors of incidental analysis refer to separate offense and therefore are inapplicable when no such offense committed or contemplated). More specifically, contrary to the dissent's assertion that the evidence "disclose[d] conduct that could constitute another crime," there was no evidence that the defendant injured or struck the victim. Accordingly, a jury could not find that the defendant's restraint of the victim was incidental to the commission of assault in the third degree or breach of the peace in the second degree. See General Statutes §§ 53a-61 (a) (1) and 53a-181 (a) (2). Moreover, as we explain hereinafter, the evidence was overwhelming that the defendant, when he

In several instances, we applied these principles to uphold kidnapping convictions that involved movement of the victim for a rather brief distance and/or confinement of the victim for quite a short period of time. See, e.g., *State* v. *Tweedy*, 219 Conn. 489, 503, 594 A.2d 906 (1991) (movement of victim throughout her apartment during robbery, sexual assault); *State* v. *Jones*, 215 Conn. 173, 182, 575 A.2d 216 (1990) (movement of victim across and off of road); *State* v. *Vass*, 191 Conn. 604, 606, 614–15, 469 A.2d 767 (1983) (movement of victim from front of store to back stockroom during sexual assault); *State* v. *Bell*, 188 Conn. 406, 409, 416, 450 A.2d

accosted the victim, intended to prevent her liberation. Particularly, the defendant told the victim, while pulling on her arm, that she was "getting in [his] car today," after having stated on a recent, separate occasion that he was "going to get [her]" and that she was "getting in [his] car." Consequently, under the unique factual circumstances presented by this case, even if the defendant's restraint of the victim also could be found to constitute the "violent, tumultuous or threatening behavior" proscribed by our statutes criminalizing creation of a public disturbance; see General Statutes § 53a-181a (a) (1); and disorderly conduct; see General Statutes § 53a-182 (a) (1); no jury reasonably could conclude that the kidnapping was incidental to his commission of those crimes, rather than the converse. See *State* v. *Weir*, 506 S.W.2d 437, 440 (Mo. 1974) (rejecting applicability of incidental analysis and holding that, on evidence presented, any assaults committed upon girl when defendant forced her into car, transported her some distance and prevented her from escaping were "incidental to the kidnapping, rather than vice versa").

Third, we disagree with the defendant that he is entitled to an incidental instruction in connection with the charge of risk of injury to a child because his conviction for that crime was reversed by the Appellate Court for insufficiency of the evidence and, therefore, he will not face retrial. *State* v. *Winot*, supra, 95 Conn. App. 362. Given that circumstance, a remand of this matter for an instruction on the incidental rule in relation to risk of injury would be illogical and wholly confusing to the jury. See *Walker* v. *Commonwealth*, 47 Va. App. 114, 122–24, 622 S.E.2d 282 (2005) (incidental rule inapplicable where defendant acquitted of robbery), aff'd, 272 Va. 511, 636 S.E.2d 476 (2006); see also *People* v. *Robbins*, 131 Mich. App. 429, 433, 346 N.W.2d 333 (1984) (incidental rule inapplicable where trial court granted defendant's motion for directed verdict on underlying assault charge); *State* v. *French*, 139 Vt. 320, 321, 428 A.2d 1087 (1981) (incidental rule inapplicable where defendants acquitted of sexual assault); but see *People* v. *Gonzalez*, 80 N.Y.2d 146, 152, 603 N.E.2d 938, 589 N.Y.S.2d 833 (1992) (analysis unaltered even if defendant acquitted of rape or robbery).

356 (1982) (confinement of victims in freezers for two to fifteen minutes during robbery); *State* v. *Lee*, 177 Conn. 335, 344, 417 A.2d 354 (1979) (movement of victim from stairway to bedroom and detention there for fifteen minutes during robbery); *State* v. *Hill*, 58 Conn. App. 797, 802–803, 755 A.2d 919 (movement of victim down driveway and under stairwell during sexual assault), cert. denied, 254 Conn. 936, 761 A.2d 763 (2000).[8] At times, however, we allowed that there conceivably could be "factual situations in which charging a defendant with kidnapping based [on] the most miniscule [movement or duration of confinement] would result in an absurd and unconscionable result . . . ."[9] (Internal quotation marks omitted.) *State* v. *Salamon*, supra, 287 Conn. 532 n.21; see also *State* v. *Troupe*, 237 Conn. 284, 315, 677 A.2d 917 (1996); *State* v. *Tweedy*, supra, 503; *State* v. *Jones*, supra, 180. The Appellate Court concluded that the facts of this case presented

[8] Case law decided subsequent to the events underlying the defendant's kidnapping conviction extended the logic of these holdings even further. See *State* v. *Luurtsema*, 262 Conn.179, 202–204, 811 A.2d 223 (2002) (movement of victim from couch to floor and confinement limited to brief period during which defendant attempted sexual assault adequate to sustain kidnapping conviction); *State* v. *Ortiz*, 83 Conn. App. 142, 159–60, 848 A.2d 1246 (kidnapping statute not unconstitutionally vague as applied to defendant's movement of victim out of police substation doorway followed by brief confinement during physical assault), cert. denied, 270 Conn. 915, 853 A.2d 530 (2004). These holdings, as well as most of those cited in the main text, were undermined by our decision in *Salamon*, but only to the extent that the restraints involved were completely incidental to the accompanying crimes, which the defendant has not claimed here, and not merely because of their brevity. We reemphasize that *Salamon* did not refute the previously established principle that, pursuant to the terms of Connecticut's kidnapping statute, no minimum period of confinement or degree of movement must be established to prove the commission of that crime. *State* v. *Salamon*, supra, 287 Conn. 546.

[9] In deciding *Salamon*, we noted that a challenge based on this predicate remained viable under the vagueness doctrine. *State* v. *Salamon*, supra, 287 Conn. 532 n.21, 546 n.31; *State* v. *DeJesus*, 288 Conn. 418, 433 n.12, 953 A.2d 45 (2008); *State* v. *Sanseverino*, 287 Conn. 608, 623 n.14, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, supra, 437, superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009).

such a situation. We disagree with that conclusion because, although the defendant's restraint of the victim was brief, it was coupled with unusually strong evidence of his intent to prevent the victim's liberation. Consequently, we are not convinced that § 53a-94 (a) afforded this defendant inadequate notice that his behavior was prohibited or that, by being prosecuted for kidnapping, he was a victim of arbitrary law enforcement.

Substantial vagueness jurisprudence provides that when a criminal statute is imprecise in describing the actions it proscribes, the presence of a specific intent requirement can temper that imprecision, thus clarifying the meaning of the statute, narrowing its application, and "purg[ing] a potentially vague [provision] of constitutional infirmity." *State* v. *Schriver*, 207 Conn. 456, 460, 542 A.2d 686 (1988). "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the [party] that his conduct is proscribed." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362, reh. denied, 456 U.S. 950, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982); see also *United States* v. *National Dairy Products Corp.*, 372 U.S. 29, 35, 83 S. Ct. 594, 9 L. Ed. 2d 561 (necessary specificity of warning afforded when statutory elements include both intent to achieve result and act done in furtherance of that result), reh. denied, 372 U.S. 961, 83 S. Ct. 1011, 10 L. Ed. 2d 13 (1963). In short, "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Screws* v. *United States*, 325 U.S. 91, 102, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); see also *Boyce Motor Lines, Inc.* v. *United States*, 342 U.S. 337, 342, 72 S. Ct. 329, 96 L. Ed. 367 (1952) ("requirement of the presence of culpable intent

as a necessary element of the offense does much to destroy any force in the argument that application of [a statute] would be so unfair that it must be held invalid").[10]

We conclude that this court's repeated pronouncements that there are no minimum time or distance requirements to establish a restraint within the meaning of § 53a-94 (a),[11] coupled with the statute's prohibition of the act of restraint only when it is accomplished with the specific intent of preventing a victim's liberation, defeats the defendant's claim that § 53a-94 (a) is unconstitutionally vague as applied to his actions on July 23, 2002. Although the defendant's restraint of the victim was brief, when it is viewed in conjunction with the powerful evidence of his intent to prevent her liberation, any argument that he was unaware of the criminality of his behavior, or that he was a victim of arbitrary enforcement, must fail.

---

[10] Connecticut courts frequently have relied on this reasoning to reject vagueness challenges to statutes with specific intent requirements. See, e.g., *State* v. *Dyson*, 238 Conn. 784, 798–99, 680 A.2d 1306 (1996) (first degree kidnapping statute not unconstitutionally vague because it requires specific intent to terrorize); *State* v. *Cavallo*, 200 Conn. 664, 668–69, 513 A.2d 646 (1986) (statute disallowing tampering with witness not unconstitutionally vague because it requires specific intent to cause witness to testify falsely or to refrain from testifying at all); *State* v. *Adgers*, 101 Conn. App. 123, 132, 921 A.2d 122 (requirement in harassment statute that mailings be sent " 'with intent to harass, annoy or alarm' " victim buttressed conclusion that statute not unconstitutionally vague), cert. denied, 283 Conn. 903, 927 A.2d 915 (2007).

[11] In order to provide the requisite notice and fair warning to a defendant that his conduct is criminal, judicial opinions need not involve precisely the same factual scenario as the defendant's case; *Rose* v. *Locke*, supra, 423 U.S. 51; or even " 'fundamentally similar' " facts. *United States* v. *Lanier*, 520 U.S. 259, 268, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997); see, e.g., *State* v. *Sorabella*, 277 Conn. 155, 193–94, 891 A.2d 897 (rejecting vagueness claim after holding, for first time, that defendant may be convicted of attempted sexual assault without actually having met victim), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006). Accordingly, it is of no consequence that all of our previous kidnapping jurisprudence involved restraints of more substantial duration than that at issue here.

Because direct evidence of an accused's state of mind typically is not available, his intent often must be inferred from his conduct, other circumstantial evidence and rational inferences that may be drawn therefrom. *State* v. *Silva*, 285 Conn. 447, 455, 939 A.2d 581 (2008). For example, intent may be inferred from the events leading up to, and immediately following, the conduct in question; see *State* v. *Lopez*, 280 Conn. 779, 814–15, 911 A.2d 1099 (2007); the accused's physical acts and the general surrounding circumstances. *State* v. *Towns*, 114 Conn. App. 155, 159, 968 A.2d 975 (2009). An accused's own words, however, constitute particularly compelling, direct evidence of his intent. See, e.g., *State* v. *Sorabella*, 277 Conn. 155, 178–79, 891 A.2d 897 (defendant's electronic communications with victim clearly established that he intended to have sexual intercourse with her upon meeting her in Connecticut), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006). Finally, when a jury evaluates evidence of a defendant's intent, it properly "rel[ies] on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." *State* v. *Rodgers*, 198 Conn. 53, 59, 502 A.2d 360 (1985).

In the present case, any potential for vagueness of § 53a-94 (a) as applied to the defendant's conduct, standing alone, was counteracted by the overwhelming evidence that he possessed the requisite specific intent to prevent the victim's liberation. The events of July 23, 2002, were not the victim's first encounter with the defendant; rather, he was convicted of attempting to kidnap the victim only four days earlier. See, e.g., *State* v. *Thomas W.*, 115 Conn. App. 467, 475, 974 A.2d 19 (jury reasonably could be expected to conclude that defendant's viewing of child victim in bathroom was for purpose of sexual gratification in light of earlier incident in which defendant exposed himself and masturbated in victim's presence), cert. granted on other

grounds, 294 Conn. 911, 983 A.2d 276 (2009). On both occasions, the defendant's verbal statements provided clear manifestations of the prohibited intent. Specifically, the defendant yelled repeatedly that he was going to "get" the victim and that she was going to get into his car. See *People* v. *Cruz*, 296 App. Div. 2d 22, 25–26, 745 N.Y.S.2d 528 (2002) (defendant's intent to abduct victim clearly evidenced by his statement, following his observation of children for forty-five minutes while masturbating, " 'I want to take you home' "), leave to appeal denied, 99 N.Y.2d 534, 782 N.E.2d 572, 752 N.Y.S.2d 594 (2002). Additionally, the defendant's car, an enclosed space capable of movement away from the scene, contained a noose made of rope and duct tape in its trunk. See *People* v. *Rollins*, 207 Mich. App. 465, 467 and n.1, 469, 525 N.W.2d 484 (1994) (defendant's intent to detain child, within meaning of kidnapping statute, clearly evidenced by grabbing and throwing her into car after offering her money if she helped him retrieve cat), cert. denied, 449 Mich. 852, 535 N.W.2d 789 (1995); see also *People* v. *Fields*, 56 Cal. App. 3d 954, 956–57, 129 Cal. Rptr. 24 (1976) (defendant's intent to abduct thirteen year old girl clearly evidenced by grabbing her by head and hair and ordering her into vehicle with running motor; trier "could reasonably find that [the] defendant not only intended to force the girl into his vehicle but intended to carry her away some appreciable distance"). Finally, the defendant grabbed the victim and pulled her toward the car as she pulled back. See *Laster* v. *State*, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009) (defendant's intent to abduct child evidenced by his pulling her away from her brother, who pulled her back in opposite direction). On the basis of the foregoing, a jury, applying its common sense and knowledge of human nature, reasonably could be expected to conclude that the defendant restrained the victim with intent to prevent her liberation. Consequently, the defendant cannot claim surprise that he

would be arrested, prosecuted and convicted of that crime, or that he was the innocent victim of an unfair and arbitrary enforcement of § 53a-94 (a).

We note in closing that our disposition of this matter "is informed by the understanding that the fundamental purpose of the void for vagueness doctrine is to ensure fair warning in order to avoid traps *for the innocent. . . .* The defendant has made no plausible argument, nor can we conceive of one, that [on July 23, 2002] he acted in reliance on the belief that his conduct was lawful, or that a person of ordinary intelligence would have no reason to know that he was engaging in prohibited conduct." (Citation omitted; emphasis added.) *State* v. *Payne*, 240 Conn. 766, 779, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). Rather, the defendant in his brief implies only that he was charged improperly, i.e., that he ought to have been charged with either unlawful restraint or attempt to commit kidnapping,[12] and not that his conduct was not criminal. For purposes of vagueness analysis, this argument is not persuasive. See *Chapman* v. *United States*, 500 U.S. 453, 467–68, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (rejecting vagueness claim and noting that "whatever debate there is [over meaning of statute] would center around the appropriate sentence and not the criminality of the conduct"), reh. denied, 501 U.S. 1270, 112 S. Ct. 17, 115 L. Ed. 2d 1101 (1991), superseded by statute as stated in *United States* v. *Clark*, 110 F.3d 15 (6th Cir. 1997); *United States* v. *White*, 882 F.2d 250, 252 (7th Cir. 1989) ("Provided that conduct is of a sort widely known

---

[12] The defendant did not raise any distinct claim in his appeal before the Appellate Court, as to either his conviction of kidnapping in the second degree or attempt to commit kidnapping in the second degree, that his conduct actually constituted some other crime. Accordingly, that court did not consider such a claim. As a consequence, this case gives us no occasion to explore in detail the precise delineation between an attempt to commit kidnapping and a completed kidnapping.

among the lay public to be criminal . . . a person is not entitled to clear notice that the conduct violates a *particular* criminal statute. It is enough that he [or she] knows that what he [or she] is about to do is probably or certainly criminal." [Emphasis in original.]); *Welton* v. *Nix*, 719 F.2d 969, 970 (8th Cir. 1983) (same); *Knutson* v. *Brewer*, 619 F.2d 747, 750 (8th Cir. 1980) (rejecting that defendant had right to expect to be convicted of lesser crime only, finding it "significant that the issue of construction involved here is not the drawing of a line between legal conduct and illegal conduct"). In such circumstances, a defendant does not meet the heavy burden of showing that a statute, as applied to the facts of his case, is unconstitutionally vague. See *Knutson* v. *Brewer*, supra, 750. On the basis of the foregoing analysis, we agree with the state that the Appellate Court improperly reversed the defendant's conviction of kidnapping in the second degree on the ground that § 53a-94 (a), as applied to the defendant's conduct, was unconstitutionally vague.

## II

The defendant argues that we may affirm the Appellate Court's judgment[13] on an alternative ground, namely, that the Appellate Court failed to conclude that the trial court's exclusion of the testimony of the victim's mother and her prior statement to police improperly denied him the right to present a defense under the sixth amendment to the United States constitution. We are not persuaded.[14]

[13] More precisely, the defendant requests that we modify the Appellate Court's judgment, from a directed judgment of acquittal on the charge of kidnapping in the second degree to a reversal of that conviction followed by a remand and retrial on that charge.

[14] The state argues at the outset that we should not review the defendant's claim because it has been waived. Specifically, it claims that, although the defendant petitioned this court for certification to appeal from the Appellate Court's judgment, he did not request review of the issue presented here and, therefore, improperly has circumvented this court's discretionary review process. Moreover, according to the state, the defendant's proposed alterna-

The following additional facts and procedural history, as recounted by the Appellate Court, are relevant. "Prior to driving the victim to the defendant's house for the identification, Officer Aaron Calkins interviewed both the victim and her mother. The victim told Calkins about the incident that had just occurred and the one that had taken place on July 19. Calkins prepared a written statement, read it to the victim and had her sign it under oath. The statement indicated, in error, that the forcible taking incident had taken place on July 19 and the yelling incident had taken place on July 23. At trial, the victim testified that, two weeks earlier, she had reread the statement and noticed that the dates were mixed up. She also testified that she was not the one who had mixed them up and that she accurately had reported to her mother what had taken place on the respective dates. Calkins testified that the statement reflected what the victim had told him on July 23 about the sequence of events.

tive ground for affirmance improperly seeks to have this court impose a different judgment than that rendered by the Appellate Court, namely, a remand and retrial rather than an acquittal. See footnote 13 of this opinion.

We disagree with the state that the defendant has waived his claim. A party need not first seek certification for review of an issue in order to raise it as an alternative ground for affirmance. *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 599–600 n.3, 748 A.2d 278 (2000). All that is necessary is that the alternative ground was raised and briefed in the appeal before the Appellate Court. See Practice Book § 84-11 (a). Additionally, pursuant to Practice Book § 84-11 (b), "[a]ny party may also present for review any claim that the relief afforded by the appellate court in its judgment should be *modified*, provided such claim was raised in the appellate court either in such party's brief or upon a motion for reconsideration." (Emphasis added.) See, e.g., *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 625–26, 904 A.2d 149 (2006) (reviewing appellees' claim that they were entitled to judgment as matter of law rather than new trial). At the Appellate Court, the defendant sought reversal of his conviction of kidnapping in the second degree on the ground that § 53a-94 (a) was void for vagueness or, alternatively, because that conviction was obtained unfairly due to multiple allegedly improper evidentiary rulings, including the one at issue here. Accordingly, the defendant may seek modification of the Appellate Court's judgment pursuant to Practice Book § 84-11 (b).

"After the close of the state's case-in-chief, defense counsel announced his intention to call the victim's mother and, through her, to offer a prior inconsistent statement to impeach the credibility of the victim.[15] Counsel indicated that he anticipated that [the mother] would testify, consistently with her written statement, that [the victim had told her[16] that] the forcible taking incident had taken place on July 19 and the yelling incident had taken place on July 23. After the state claimed that the mother would contradict her sworn statement [by agreeing with the victim's testimony as to the dates of the charged incidents], the defendant indicated he would introduce her written statement for substantive purposes under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)."[17] (Internal quotation marks omitted.) *State* v. *Winot*, supra, 95 Conn. App. 354–55.

The state objected, arguing, inter alia, that "the [mother's] statement was hearsay and that offering it for impeachment purposes was a mere subterfuge for introducing substantively inadmissible evidence [as contemplated by § 6-4 of the Connecticut Code of Evidence].[18] Outside of the presence of the jury, the mother repudi-

[15] Generally, "[t]he credibility of a witness may be impeached by evidence of a prior inconsistent statement made by the witness." Conn. Code Evid. § 6-10 (a).

[16] It is not disputed that the victim's mother did not witness, and, further, had no personal knowledge of, the incidents involving the defendant and the victim on July 19 and July 23, 2002. The mother's statement only purported to recount what the victim had told her following each incident.

[17] In short, a statement admissible pursuant to *Whelan* satisfies a hearsay exception and, therefore, is admissible to prove the truth of the matter asserted therein, and not merely for impeachment purposes. See *State* v. *Mukhtaar*, 253 Conn. 280, 306, 750 A.2d 1059 (2000).

[18] Section 6-4 of the Connecticut Code of Evidence provides: "The credibility of a witness may be impeached by any party, including the party calling the witness, unless the court determines that a party's impeachment of its own witness is primarily for the purpose of introducing otherwise inadmissible evidence."

ated her statement, and the court sustained the state's objection and excluded the [s]ubterfuge testimony . . . ." (Internal quotation marks omitted.) Id., 356.

On appeal to the Appellate Court, the defendant argued that the mother's statement was admissible under *Whelan* and was not barred by § 6-4 of the Connecticut Code of Evidence. The Appellate Court disagreed, concluding that the trial court properly excluded the statement as hearsay because it purported to report the statements of the victim. Id., 356–57. According to the Appellate Court, "[i]t is clear that the defendant's primary purpose in calling the [victim's] mother to testify, after being informed that she would recant, was to impeach her. In impeaching her, the defendant's objective was to get the statement before the jury with the intent that it be used substantively . . . ." Id., 357. Alternatively, the Appellate Court determined that the statement was inadmissible because it amounted to irrelevant extrinsic evidence offered to impeach the victim on a collateral matter, namely, the dates of the charged offenses. Id., 357 n.16. The Appellate Court held, therefore, that the statement properly was excluded. Id., 357. This appeal followed.

The defendant argues that, pursuant to *Whelan*, he had the right to present the signed, sworn statement of the victim's mother as substantive evidence when she indicated that she would repudiate that statement if called to testify at trial, because the statement was in writing and had been signed under oath by the mother, and the mother had personal knowledge of what the victim had told her.[19] According to the defen-

---

[19] Although the defendant in his brief challenges the exclusion of *both* the mother's trial testimony and her written statement, we construe his claim as pertaining mainly to the question of the admissibility of the statement as substantive evidence, in the event that the mother had been permitted to repudiate her sworn testimony, as she indicated she would during the defendant's offer of proof. Because the mother's proposed testimony, as demonstrated by the offer of proof, was consistent with the victim's testimony and, therefore, would not have been useful to the defendant either

dant, the trial court improperly disregarded *Whelan* and instead relied on *State* v. *Graham*, 200 Conn. 9, 509 A.2d 493 (1986), which underlies § 6-4 of the Connecticut Code of Evidence and pertains to prior oral statements only, when it disallowed the mother's testimony and written statement. The defendant claims that exclusion of this evidence violated his constitutional right to present a defense. We agree with the Appellate Court that the evidence properly was excluded and, therefore, the defendant's right to present a defense was not compromised.[20]

We begin our analysis by setting forth the applicable legal principles. "The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the

substantively or to impeach the victim, its exclusion did not harm him except insofar as it prevented the introduction of the mother's prior inconsistent statement under *Whelan*. Furthermore, there is no indication from the offer of proof that the defendant intended to question the mother as to any other matters, nor does he claim on appeal that there were any such matters that he wished to pursue.

[20] Additionally, even without the mother's testimony and statement, the defendant otherwise was able to introduce evidence of the victim's inconsistent reporting of the dates of the subject events, through the cross-examination of both the victim and Officer Calkins on that topic. See *State* v. *Kelly*, 256 Conn. 23, 76, 770 A.2d 908 (2001) (no violation of constitutional right to present defense where subject matter of precluded testimony was presented through other witnesses); *State* v. *Shabazz*, 246 Conn. 746, 758 n.7, 719 A.2d 440 (1998) (same), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citation omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 624–25, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); see also *State* v. *Tutson*, 278 Conn. 715, 750–51, 899 A.2d 598 (2006) (no violation of constitutional right to present defense where trial court properly excluded evidence on hearsay grounds).

Finally, "we note that [t]he admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the . . . discretion of the trial court. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 643, 945 A.2d 449 (2008); accord *State* v. *Saucier*, 283 Conn. 207, 217–19, 926 A.2d 633 (2007) (Adopting the " 'hybrid' " approach to hearsay claims and concluding that "[w]e review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." [Cita-

tion omitted.]). We now turn to the rules cited by the parties when arguing whether the mother's statement was admissible.

Prior to 1986, Connecticut courts adhered to the common-law rule disallowing a party from impeaching or discrediting its own witnesses, in the absence of certain exceptions. See *State* v. *Graham*, supra, 200 Conn. 15. That year, however, in *Graham*, we determined that there was "no longer justification for the common law rule prohibiting a party from impeaching his own witness," and held that, henceforth, "[a] party may impeach his own witness in the same manner as an opposing party's witness," for example, by "using prior inconsistent statements." Id., 17. We emphasized, however, that a party "may not use a prior inconsistent statement under the guise of impeachment for the primary purpose of placing before the jury evidence which is admissible only for credibility purposes in hope that the jury will use it substantively." Id., 18. In that circumstance, we explained, the "impeachment would become a subterfuge and the court should not permit it." Id. The holding of *Graham*, along with the foregoing caveat, thereafter was codified as § 6-4 of the Connecticut Code of Evidence.[21] See footnote 18 of this opinion.

Shortly after deciding *Graham*, we decided *Whelan*. Prior to deciding *Whelan*, we "adhered to the traditional view that a prior inconsistent statement of a nonparty witness is inadmissible hearsay if offered to prove the truth of the matters asserted therein and, therefore, is

---

[21] As explained in the commentary to § 6-4 of the Connecticut Code of Evidence, this court, "[i]n *Graham* and subsequent decisions . . . has supplied a two-pronged test for determining whether impeachment serves as a mere subterfuge for introducing substantively inadmissible evidence. A party's impeachment of a witness it calls by using the witness' prior inconsistent statements is improper when: (1) the primary purpose of calling the witness is to impeach the witness; and (2) the party introduces the statement in hope that the jury will use it substantively. [See, e.g.], *State* v. *Graham*, supra, 200 Conn. 18." (Citations omitted.)

admissible only for impeachment purposes." (Internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 303, 750 A.2d 1059 (2000). In *Whelan*, we abandoned, in certain circumstances, that limitation in favor of "a rule allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination."[22] (Internal quotation marks omitted.) Id., 304. We reasoned that, under those circumstances, the nonparty witness' prior statement generally is sufficiently reliable to be admitted to prove the truth of the matter asserted therein. Id., 305.

The rule of *Whelan* had implications for the rule of *Graham*, as the commentary to § 6-4 of the Connecticut Code of Evidence explains: "[I]f the prior inconsistent statement [offered to impeach a witness] is substantively admissible under *State* v. *Whelan*, [supra, 200 Conn. 753] . . . or under other exceptions to the hearsay rule, the limitation on impeachment will not apply because impeachment with the prior inconsistent statement cannot result in introducing otherwise inadmissible evidence." (Citation omitted.) In other words, if the prior inconsistent statement is admissible pursuant to *Whelan* or another hearsay exception, there can be no subterfuge because the statement properly may be used for substantive purposes, not just impeachment.

The defendant argues, in short, that the trial court improperly excluded the written statement of the vic-

---

[22] This rule has been codified in § 8-5 of the Connecticut Code of Evidence, which provides in relevant part: "The following [is] not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial:

"(1) Prior inconsistent statement. A prior inconsistent statement of a witness, provided (A) the statement is in writing or otherwise recorded by audiotape, videotape or some other equally reliable medium, (B) the statement or recording is duly authenticated as that of the witness, and (C) the witness has personal knowledge of the contents of the statement. . . ."

tim's mother pursuant to the Connecticut Code of Evidence § 6-4 because the statement was admissible substantively pursuant to the rule of *Whelan*, and, therefore, could not have been offered as subterfuge pursuant to *Graham*. We agree with the Appellate Court that the trial court properly excluded the mother's statement for substantive purposes because, although that statement met the criteria of *Whelan* and was not itself hearsay, it nevertheless contained within it another level of hearsay for which no hearsay exception applied.

Specifically, because the mother had personal knowledge of what the victim said to her, the mother's signed, sworn statement recounting the victim's statements regarding the events of July 19 and 23, 2002, met the criteria of *Whelan*, and, therefore, was not itself hearsay. *State* v. *Pierre*, 277 Conn. 42, 59, 890 A.2d 474 (trial witness' written statement to police recounting statements made in his presence by codefendants met criteria of *Whelan*), cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006); *State* v. *Woodson*, 227 Conn. 1, 22, 629 A.2d 386 (1993) (trial witness' tape-recorded statement to police recounting admissions made to him by defendant met criteria of *Whelan*). The victim's statements to her mother, however, that is, her accounts of the events, constituted *another* level of hearsay within her mother's *Whelan* statement. See *State* v. *Lewis*, 245 Conn. 779, 802, 717 A.2d 1140 (1998) (third party's statements to informant, recounted in informant's statement to police, constitute multiple levels of hearsay). "When a statement is offered that contains hearsay within hearsay, each level of hearsay must itself be supported by an exception to the hearsay rule in order for that level of hearsay to be admissible." Id.; see also Conn. Code Evid. § 8-7; C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.62.2, p. 750. Accordingly, when "prior statements [admissible under *Whelan*] are admitted for substantive purposes, hearsay contained

in such prior statements should not be admitted unless such hearsay itself satisfies a hearsay exception." C. Tait, supra, § 8.33.2, p. 681; see also *State* v. *Buster*, 224 Conn. 546, 560 n.8, 620 A.2d 110 (1993); see, e.g., *State* v. *Pierre*, supra, 66–67 (witness' *Whelan* statement properly admitted because defendants' statements recounted therein met dual inculpatory statement and adoptive admission exceptions to hearsay rule); *State* v. *Woodson*, supra, 22 (witness' *Whelan* statement properly admitted because statement recounted therein met hearsay exception for admission of party). In the present matter, because the defendant suggested no hearsay exception[23] that would warrant admissibility of the victim's statements to her mother for substantive purposes, the trial court properly excluded the mother's *Whelan* statement.[24] Pursuant to *Pierre*, and, generally,

[23] The defendant, in his brief, alludes to the victim's statements as possibly meeting the requirements of the spontaneous utterance exception to the rule against hearsay. See Conn. Code Evid. § 8-3 (2). He did not so argue to the trial court, however, and it is well established that a party may not claim one ground for evidentiary error at trial and then argue a different ground on appeal. See *State* v. *Jose G.*, 290 Conn. 331, 342–46, 963 A.2d 42 (2009). "This rule limiting appellate review of evidentiary claims to the ground asserted at trial applies with equal force to *Whelan* issues." *State* v. *Simpson*, supra, 286 Conn. 646.

[24] It is clear that the defendant, by arguing the applicability of *Whelan*, sought to introduce the victim's statements, as recounted in her mother's statement, substantively. He continues to argue on appeal that the mother's statement, had it been admitted, "would not only [have] substantially undercut [the victim's] testimony, but it would [have] support[ed] the defendant's denials of touching or hurting any girl . . . . It would also [have] preclude[d] his conviction for the completed offense of kidnapping in the second degree, and undermine[d] the state's closing argument that the defendant lied to police."

Even if, however, the mother's statement was offered only to impeach the victim's credibility, as the defendant originally had sought to do by presenting the mother's testimony, we agree with the Appellate Court that exclusion still would have been proper because the statement was extrinsic evidence of the victim's prior inconsistent statements as to a collateral matter only, namely, the precise dates on which each of the charged offenses occurred. "As a general rule, extrinsic evidence of a prior inconsistent statement may not be admitted to impeach the testimony of a witness on a collateral matter. . . . Thus, on cross-examination, a witness' answer

our rules governing hearsay within hearsay, it is not permissible to bootstrap nonadmissible hearsay into admissible evidence by ensconcing it within a *Whelan* statement. On the basis of the foregoing analysis, we reject the defendant's proposed alternative ground for affirming the Appellate Court's judgment.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of conviction of kidnapping in the second degree. The judgment is affirmed in all other respects.

In this opinion NORCOTT, PALMER, VERTE-FEUILLE and McLACHLAN, Js., concurred.

KATZ, J., with whom, ZARELLA, J., joins, dissenting. I disagree with the majority's determination that the

regarding a collateral matter is conclusive and cannot be contradicted later by extrinsic evidence." (Citation omitted.) *State* v. *Valentine*, 240 Conn. 395, 403, 692 A.2d 727 (1997); see also *State* v. *Diaz*, 237 Conn. 518, 548, 679 A.2d 902 (1996); *State* v. *Negron*, 221 Conn. 315, 327, 603 A.2d 1138 (1992); C. Tait, supra, § 6.35.7, p. 488. "A matter is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness." *State* v. *Valentine*, supra, 403.

No statute of limitations or alibi defenses were at issue in this case, and "[i]t is a well-established rule in [Connecticut] that it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the statute of limitations . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Romero*, supra, 269 Conn. 505; see also *State* v. *Morrill*, 197 Conn. 507, 552, 498 A.2d 76 (1985) (same); *State* v. *Ramos*, 176 Conn. 275, 276–77, 407 A.2d 952 (1978) (same). "[W]here time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material." (Internal quotation marks omitted.) *State* v. *Laracuente*, 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). In this regard, the impeachment evidence the defendant sought to introduce pertained to a collateral matter and, therefore, simply was not relevant. Moreover, even had it been admissible substantively, it is unclear how it could have precluded the defendant's conviction of kidnapping in the second degree, as it tended to show only that the offense had been committed on a different day, not that it had not been committed at all.

defendant, Gregory B. Winot, is not entitled to a judgment reversing his conviction of kidnapping in the second degree and remanding the case for a new trial on that charge because, in the majority's view, the new rule for kidnapping offenses adopted in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008),[1] and the attendant remedy for appeals pending prior to the adoption of that rule established in *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), and applied in *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009), are not "implicated by the facts of the present appeal."[2] Accordingly, I respectfully dissent.

As the majority recognizes in footnote 7 of its opinion, in *State* v. *Salamon*, supra, 287 Conn. 542, we determined that, in defining kidnapping, "the legislature meant to exclude from its scope an intent to confine or move a victim that is wholly incidental to the commission of another crime which, by its nature, necessitates

---

[1] In *State* v. *Salamon*, supra, 287 Conn. 528–48, we reconsidered our long-standing interpretation of our kidnapping statutes, General Statutes §§ 53a-91 through 53a-94a, encompassing even restraints that merely were incidental to and necessary for the commission of another substantive offense, such as robbery or sexual assault. We ultimately concluded that "[o]ur legislature . . . intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." Id., 542.

[2] In light of this conclusion, I do not address the majority's determination that the Appellate Court improperly concluded that the kidnapping in the second degree statute, General Statutes § 53a-94 (a), was unconstitutionally vague as applied to the defendant's conduct. See *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 635 n.15, 904 A.2d 149 (2006) ("[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case" [internal quotation marks omitted]); *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986) (same); see also *State* v. *Cofield*, 220 Conn. 38, 49–50, 595 A.2d 1349 (1991) (citing same principle).

some restraint of the victim." The majority further acknowledges that we expressly stated in *Salamon* that "[w]hether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case"; id., 547; and that because the evidence reasonably supported a finding that the restraint was *not* merely incidental to the commission of some other, separate crime in that case, the state was entitled to have the ultimate factual determination of whether the defendant intended to prevent the victim's liberation made by the jury. Id., 547–48. Indeed, in *State* v. *DeJesus*, supra, 288 Conn. 418, despite the fact that there was little doubt that the defendant's restraint of the victim was merely incidental to his assault of the victim, we nevertheless refused to engage in speculation, to conduct a sufficiency of the evidence analysis, or even to examine in detail the specific evidence adduced at trial, deciding instead that whether there was a separate restraint was a question better left to a properly instructed jury. See id., 438–39.

Notably, following our decision in *DeJesus*, we granted a motion for reconsideration of our decision in *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), in which, after deciding that the facts of *Sanseverino* implicated the rule announced in *Salamon*, we had concluded that the defendant was entitled to a judgment of acquittal rather than a new trial on the kidnapping charge because it seemed so apparent that the defendant's restraint had been wholly incidental to his commission of a sexual assault. See *State* v. *Sanseverino*, supra, 291 Conn. 578. Upon reconsideration, however, the court changed its approach, concluding instead that the proper remedy was to remand the case to afford the state the opportunity to retry the defendant on the kidnapping charge at which trial the jury properly would be instructed as to the rule of *Salamon* and the

state would have the opportunity to present evidence and argue that the restraint involved was not entirely incidental to the defendant's commission of sexual assault. Id., 589–90.

Despite this case law, in the present case, the majority concludes that the remedy established by *DeJesus* is not implicated because, inter alia, there was "no evidence presented at trial suggesting that the defendant, when he grabbed the victim's arm, was in the process of committing another crime against her to which the restraint was incidental." I disagree. The evidence did indeed disclose conduct that could constitute another crime, i.e., assault in the third degree, breach of the peace, creating a public disturbance or disorderly conduct, to which a jury reasonably could find the restraint was wholly incidental.[3] Therefore, I believe the incidental rule does apply and that it would be necessary for the trial court, on remand, to submit the issue to a properly instructed jury in accordance with our newly established kidnapping jurisprudence.[4] In short,

---

[3] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (2) assaults or strikes another . . . ."

General Statutes § 53a-181a (a) provides in relevant part: "A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior . . . ."

General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ."

[4] I note that the decision to charge the defendant with any of these offenses would be solely within the state's discretion. See *State* v. *Kinchen*, 243 Conn. 690, 699, 707 A.2d 1255 (1998) ("There can be no doubt that [t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor. . . . Prosecutors, therefore, have a wide latitude and broad discretion in determining when, who, why and whether to prose-

because there is evidence of another crime and because the evidence reasonably would support a finding that the restraint was merely incidental to the commission of that other, separate crime, the ultimate factual determination regarding the defendant's intent ultimately must be made by the jury on remand.[5]

Accordingly, I respectfully dissent.

cute for violations of the criminal law. . . . This broad discretion, which necessarily includes deciding which citizens should be prosecuted and for what charges they are to be held accountable . . . rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." [Citations omitted; internal quotation marks omitted.]).

Whether the state decides to charge the defendant with these other offenses, however, is irrelevant to the analysis of the question before this court. "Applying [the pertinent] standard to the facts in *Salamon*, we concluded that, although the defendant had not been charged with assault, the judgment of conviction of kidnapping in the second degree had to be reversed and the case remanded for a new trial because the defendant was entitled to a jury instruction explaining that a kidnapping conviction could not lie if the restraint was merely incidental to the assault." *State* v. *Sanseverino,* supra, 287 Conn. 624.

[5] Certainly, this evidence is no more clear-cut than the evidence in *Salamon* that we concluded required a remand. See *State* v. *Salamon,* supra, 287 Conn. 549–50 (citing evidence that defendant grabbed victim by neck, causing her to fall, punched her and shoved his fingers down her throat while holding her down by her hair).